THE STATE ex rel. SEEBERT G. JONES, Circuit Attorney of City of St. Louis, v. MALLINC-KRODT CHEMICAL WORKS, Appellant.

**In Banc, April 28, 1913.**

1. **DEFECT OF PARTIES: Waiver.** A defect of parties, apparent on the face of the petition, should be raised by demurrer; and even if so raised, defendant waives the defect by answering to the merits.

2. **PROPER PLAINTIFF: In Name of State: Defect of Parties.** A suit to oust a corporation of its charter and franchises for failure to make the affidavit required by the statute (Sec. 10322, R. S. 1909) concerning its relation to trusts, should be brought

in the name of the State at the relation of the prosecuting or circuit attorney. And even were it admitted that a petition entitled, "The State of Missouri, at the Relation of Seebert G. Jones, Circuit Attorney of the City of St. Louis, Relator, v. Mallinckrodt Chemical Works, a Corporation, Respondent," and beginning: "Comes now Seebert G. Jones, circuit attorney within and for the city of St. Louis, in the State of Missouri, and states that the respondent is," etc., is not a suit brought in the name of the State, but solely in the name of the circuit attorney, yet the defect is apparent on the face of the petition, and should have been raised by demurrer, and that not having been done it was waived by answering over on the merits. [Overruling State to Use of Tapley v. Matson, 38 Mo. 489; Higgins v. Railroad, 36 Mo. 418; Proctor v. Railroad, 42 Mo. App. 124; Headlee v. Cloud, 51 Mo. 301.]

3. ————: ————: To Use of City: Fines and Forfeitures. The petition will not be held defective on the ground that, the ultimatum of the suit being to impose a fine and forfeiture, the suit should have been brought "for the use of the city, in accord with the Constitution, requiring all such fines and penalties to go direct to the school fund," for several reasons: *First*, if it was a defect to bring the suit in the name of the State at the relation of the circuit attorney, that was a defect apparent on the face of the petition, and should have been raised by demurrer, and was waived by answer; *second*, even though the statute (Sec. 10304, R. S. 1909) which requires all fines and penalties collected under the provisions of chapter 98 to be paid into the State Treasury were unconstitutional and void, the rest is not, for that section is separable from the rest of the act; and, *third*, whatever disposition is to be made of the fines hereafter collected is a matter of future determination when different persons make claim to them.

4. CORPORATION: Annual Affidavit: Forfeiture of Charter: No Allegation of Trust Agreement: Statutes in Pari Materia. Articles one and three of Chapter 98, R. S. 1909, are not *in pari materia*. Each is an independent statute, prescribing different penalties for its violation. Article three requires a corporation to file an annual affidavit showing whether it has entered into any combination or agreement with any other corporation, and prescribing a forfeiture of its charter and the imposition of fines if it fails to file such affidavit within a designated time; and in a procedure brought thereunder it is not necessary either to allege or prove that the corporation has entered into a pool, combination or trust. Article one has for its aim a different purpose, namely, to prosecute and punish a corporation for entering into such a combination or trust.

5. ——————: ——————: **Ex Post Facto Law.** A statute enacted in 1907, under which the Secretary of State in 1910 required a corporation organized and existing prior to 1907, to make and file an affidavit that it had not within the year next preceding July 1, 1910, entered into any combination or agreement of trust with any other, is not *ex post facto* in its operation as to such corporation. It in no wise attempts to make criminal an act which had been committed prior to its enactment.

6. ——————: ——————: **Procedure: Quo Warranto Unnecessary.** The statute requiring a corporation to make and file with the Secretary of State an affidavit showing that within the last preceding year it has not entered into any combination or agreement of trust with any other corporation, prescribes in detail the procedure for its own violation, and therefore it is wholly unnecessary for the circuit or prosecuting attorney to resort to the writ of *quo warranto* or an information in the nature of a *quo warranto*, and hence the petition is not defective for failure to meet the necessary requirements of either.

7. ——————: ——————: **County Includes City of St. Louis.** The statute (Sec. 10322, R. S. 1909) requiring a corporation to make an affidavit showing it has not within one year violated the antitrust laws, and prescribing the form of the affidavit, beginning with the words, "State of Missouri, County of ——————," does not mean that the affidavit could be made only in a county, and that no alteration in the affidavit could be made by the officers of a corporation in the city of St. Louis. Another statute (Sec. 8057, R. S. 1909) provides that where the word "county" is "used in any law, general in its character to the whole State, the same shall be construed to include the city of St. Louis, unless such construction be inconsistent with the evident intent of such law, or of some law specially applicable to such city;" and that statute authorizes such an alteration in the affidavit as makes it applicable to that city.

8. ——————: ——————: **Constitutionality of Statute: Equal Protection: Different Punishment for Partnerships.** The statute which requires a corporation to make and file an affidavit showing it has not entered into combinations and trust arrangements with other corporations or their officials, and subjecting it to a fine and a forfeiture of its charter for a failure to make such affidavit, while exempting partnerships, individuals and associations of individuals from such duty and penalty, does not violate the Fourteenth Amendment to the U. S. Constitution, in denying to such corporation and its officers the equal protection of the laws. The State may impose a different or greater punishment upon a corporation than that imposed on an individual or partnership for the same offense, without denying to it that equal protection guaranteed by that amendment—one reason being

that corporations derive all their powers from the State, and individuals and partnerships have no charters which can be forfeited by the State.

9. ————: ————: Inadequate Remedy: Fine as Only Punishment. Experience has taught the courts, both State and Federal, that fines alone are ineffectual to destroy pools, trusts, conspiracies and combinations in restraint of trade, and in limiting production and fixing and maintaining prices.

10. ————: ————: Self-incrimination. The statute (Sec. 10322, R. S. 1909) requiring the president, secretary or managing officer of a corporation to make and file an affidavit showing it has not entered into any of the trusts, pools or other combinations denounced by article one of the same chapter, is not violative of that part of the Constitution which provides that no person shall be compelled to testify against himself, for section 10325 provides that "no person shall be subject to any criminal prosecution on account of any matter or thing truthfully disclosed by the affidavit" required by said section 10322, and that section, when read in connection with said section 10322, includes all matters and things prohibited by article one of the chapter, among other things, penalties and forfeitures.

11. ————: ————: Two Affidavits on Same Paper. The fact that the two affidavits required by Sec. 10322, and by Secs. 3025-3034, R. S. 1909, respectively, were printed on the same piece of paper, the one on the front side and the other on the back, where both were received by respondent on June 14th, and the one was executed, but the other was not, and the excuse for refusing to execute it was, not that they were not sent separately, but that respondent's officers did not believe they were obliged to execute or answer it, will not save the respondent, who knowingly elected to violate it, from an enforcement of the penalties and forfeiture prescribed by the statute.

12. ————: ————: Filing Permitted After Final Judgment. The leniency extended to a corporation which has failed to file the affidavit required by Sec. 10322, R. S. 1909, to file such affidavit before final judgment, is irrevocably withdrawn after final judgment of forfeiture has been entered by the trial court. The provisions of the statutes of this and other States and of Congress may seem severe, but their purpose is to put an end to illegal combinations in restraint of trade; and a corporation, which knowingly and intentionally refused to obey the law, and which in its brief in the Supreme Court made no request to be permitted to file the affidavit, but only made it in oral argument and upon the condition that the court find the statute valid and it guilty of its violation, is not entitled to leniency.

249 Mo.—45

*Held*, by BOND, J., dissenting, that, the failure of defendant's officer to file the affidavit being due to advice of counsel that, the inquiries made by the blank affidavit were inquisitorial and unconstitutional, the extreme penalty of forfeiture should not go, but defendant should be permitted to file the affidavit and the judgment of forfeiture should be modified.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Barclay, Fauntleroy & Cullen* and *Schnurmacher & Rassieur* for appellant.

(1)   The trial court erred in overruling the demurrer because of the defect of parties plaintiff. The State would be the only authorized plaintiff, yet the petition in no manner alleges that the State brings the suit or is plaintiff. R. S. 1909, sec. 10322; Patterson v. Temple, 27 Ark. 202; U. S. v. Dougherty, 7 Blatchf. 424.   (2)   The trial court erred in not sustaining the demurrer, for defects in not alleging the necessary party plaintiff to be the State, and the body of the petition alone demonstrates the party moving. State v. Matson, 38 Mo. 489; Higgins v. Railroad, 36 Mo. 418; Proctor v. Railroad, 42 Mo. App. 124; Headlee v. Cloud, 51 Mo. 301.   (3)   The demurrer should have been sustained because of defect of parties plaintiff, in that the action should be "for the use" of the city of St. Louis, in accord with the Constitution, since all such fines and penalties go direct to the school fund. The provision (Sec. 10304) in this law for payment into the State Treasury is unconstitutional. Constitution of Missouri, art. 11, sec. 8; In re Stead, 116 Mo. 537; R. S. 1909, sec. 3030; State v. Land Co., 97 Mo. App. 226.   (4)   The trial court erred in overruling the demurrer because there is no allegation in the petition that defendant ever had any connection with any contract or understanding or other agreement illegal un-

der the law against pools, trusts and monopolies. The omission to file the affidavit of innocence, without such allegations and proof, is no ground to forfeit the charter of defendant. R. S. 1909, sec. 10304. While the terms of section 10322 may appear at first glance to warrant forfeiture, they are to be read along with section 10304 *in pari materia,* and together the paramount intent is to forfeit for breach of the law. Want of affidavit warrants beginning of suit (if the requirement be valid) but that alone is not sufficient to forfeit the charter. R. S. 1909, sec. 10298; Taylor v. Taylor, 10 Minn. 107; Edelstein v. U. S., 149 Fed. 636. The entire chapter on pools, trusts and conspiracies should be included and considered in reaching the intent of section 10322, and the literal terms of the latter (or rather its implication) as to forfeiture should be narrowed in order to harmonize with section 10304, which defines the controlling purpose of the whole enactment. That is necessary according to established rules for interpretation of statutes. State v. Emerson, 39 Mo. 89; State v. King, 44 Mo. 283; State v. Diveling, 66 Mo. 375; State v. Hemen, 70 Mo. 441; Cole v. Skrainka, 105 Mo. 303; Kane v. Railroad, 112 Mo. 34. (5) The trial court erred in not sustaining the demurrer (on the last ground thereof) because the required statutory affidavit of innocence (recited in the petition) cannot lawfully be demanded of any officer of defendant, in that the statement exacted therein that the company has not, "at any time within one year" from the date of the affidavit, participated in any of the forbidden agreements, is *ex post facto* and makes the requirement inconsistent with section 10304, as well as unconstitutional and void. Constitution of Mo., art. 2, sec. 15; State ex rel. v. Hardware Co., 109 Mo. 118. (6) The trial court erred in not sustaining the demurrer because the petition does not state a cause of action, in that a proceeding by *quo warranto,*

either ancient, original, or by information of that nature, is essential to obtain forfeiture of franchise of a business corporation. R. S. 1909, sec. 2631. Section 10322 does not conflict with or repeal section 2631, nor authorize any other proceeding than by *quo warranto* to forfeit such a charter. (7) The trial court erred in not sustaining the demurrer to the petition because the form of the affidavit demanded of innocence by the officers of defendant could only be made in a county, and no authority to alter the form in any respect is given by the law to company officers in St. Louis City. Hence, they could not swear to same in its procrustean form without being penalized under section 10324. R. S. 1909, sec. 10322. (8) The trial court, by refusing the peremptory instruction for defendant, denied to defendant and its officers the equal protection of the laws guaranteed to them by the 14th Amendment to the Federal Constitution, and denied to defendant and its officers their rights and immunities thereby secured, in that it is unreasonable and oppressive to require corporate officers to make such an affidavit of innocence, and yet to leave every "partnership, individual or association of individuals" (also within the law against monopolies, sections 10299, 10303) in the same situation and circumstances immune from such requirement. Railroad v. Ellis, 165 U. S. 150; Paddock v. Railroad, 155 Mo. 524. (9) The trial court erred in not finding for defendant because the requirement of the affidavit of innocence is not validated by the supposed immunity defined in section 10325, because as to the affidavit the immunity is not complete and not commensurate with the constitutional guaranty to the officers of the defendant against the giving of a self-incriminating affidavit. State ex rel. v. Hardware Co., 109 Mo. 118; Counselman v. Hitchcock, 142 U. S. 547; Glickstein v. U. S., 222 U. S. 141; Edelstein v. U. S., 149 Fed. 642.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for respondent; *Seebert G. Jones* and *Forrest G. Ferris* of counsel.

(1) The requirement in Sec. 10322, R. S. 1909, that an affidavit be made is not void as violative of the Constitution which provides that "no person shall be compelled to testify against himself in a criminal cause," because that section provides that "no person shall be subject to any criminal prosecution on account of any matter or thing truthfully disclosed by the affidavit." The immunity afforded by the statute is coextensive with the constitutional privilege of silence, and it is sufficient. R. S. 1909, sec. 10325; People ex rel. v. Foundry and Iron Co., 201 Ill. 236; State v. Jacks, 69 Kan. 387; Jack v. Kansas, 199 U. S. 272; State ex inf. v. Standard Oil Co., 218 Mo. 375; Brown v. Walker, 161 U. S. 596; Hale v. Henkel, 201 U. S. 43. (2) Section 10322 does not deny to appellant corporation the "equal protection of the laws," although it applies only to corporations and exempts individuals and partnerships. People ex rel. v. Foundry Co., 201 Ill. 236; State ex inf. v. Oil Co., 218 Mo. 368; Land & Fruit Co. v. Curry, 103 Pac. (Cal.) 341; Constitution, art. 12, sec. 5. (3) The Legislature had the power by this statute to require the affidavit to be filed, and to provide that a failure in that regard should subject the offending party to a penalty to be adjudged against it by the courts. People ex rel. v. Foundry Co., 201 Ill. 236; Kaiser Land Co. v. Curry, 103 Pac. 341. This is a proceeding under article 3 of chapter 98, R. S. 1909, not under article 1 of said chapter. Section 10304, by its terms, applies only to violations of the provisions of article 1, and section 10322 does not refer to section 10304. (4) This is a proceeding authorized and provided by statute (section 10322) to enforce a statutory requirement. A statement of the

facts under the statute is all that is required of the pleading. (5) This proceeding was brought by the circuit attorney "in the name of the State and at the relation of the circuit attorney," as required by statute, and the petition is sufficient in its allegations as to parties. R. S. 1909, secs. 10322, 1794, 1813; Bliss on Code Pleading (1 Ed.), secs. 145, 150; Phillips on Code Pleading, secs. 175, 177; State ex inf. v. Evans, 166 Mo. 349; State ex inf. v. Tobacco Co., 177 Mo. 6. It was not a requirement of law that this proceeding be brought "for the use of the city of St. Louis." State v. Newell, 140 Mo. 282; Cunningham v. Railroad, 165 Mo. 270, 276. (6) The form of the affidavit required is not unreasonable. To enforce the requirement is not to deny "due process of law." (7) The word "county" in section 10322 includes the "city of St. Louis." R. S. 1909, sec. 8057, rule 19; Kansas City v. Neal, 122 Mo. 234.

WOODSON, J.—This was a suit instituted in the circuit court of the city of St. Louis, by the respondent against the appellant, to have its charter forfeited for failure to make and file with the Secretary of State, an anti-trust affidavit, as required by sections 10322 and 10323, Revised Statutes 1909, regarding pools, trusts, conspiracies and discriminations.

A trial was had before the court without the intervention of a jury, which resulted in a decree in favor of the respondent forfeiting the charter of the appellant as prayed.

In proper time all necessary steps for an appeal were duly taken, and thereafter the cause was appealed to this court.

The petition filed in the cause was as follows:

"State of Missouri, City of St. Louis, ss.

"In the Circuit Court of the City of St. Louis, October Term, 1910.

"The State of Missouri, at the Relation of Seebert
G. Jones, Circuit Attorney of the City of St. Louis,
Relator,

v.

Mallinckrodt Chemical Works, a Corporation, Re-
spondent.

"Comes now Seebert G. Jones, circuit attorney
within and for the city of St. Louis, in the State of
Missouri, and states that the respondent is. and at all
times hereinafter mentioned was, a corporation duly
organized, incorporated and existing, under and by
virtue of the laws of Missouri, located and transact-
ing and conducting business in the city of St. Louis
and State of Missouri, and as such corporation, re-
spondent is amenable to the provisions of chapter 98
of the Revised Statutes of Missouri of 1909, entitled
'Pools, trusts, conspiracies and discriminations.'

"Relator states that on or about the first day of
July, A. D. 1910, the Secretary of State of the State
of Missouri, in obedience to the requirements of sec-
tion 10322 of said Revised Statutes, duly addressed
and mailed to the president of Mallinckrodt Chemical
Works, 3600 North Second street, St. Louis, Missouri,
the respondent incorporated company, a letter of in-
quiry as to whether the said respondent corporation
had all or any of its business or interest in or with any
trust, combination or association of persons or stock-
holders, as named in the provisions of article 1 of said
chapter 98 of said Revised Statutes, and requiring an
answer, under oath, of the president, secretary, or
managing officer of said respondent company, and said
Secretary of State duly inclosed in said letter of in-
quiry a form of affidavit, being the same form required
by the laws of the State of Missouri and prescribed
and set forth in said section 10322 of said Revised
Statutes and being in words and figures as follows, to-
wit:

(Here the petition sets forth a full copy of the form of affidavit prescribed in section 10322.)

"And thereupon it became the duty of said respondent corporation to make answer to such inquiry by filing or causing to be filed with the said Secretary of State the affidavit prescribed in and required by sections 10322 and 10323 of said Revised Statutes, but respondent corporation, unmindful of its said duty, in disregard of the statutes and laws of this State in respect to pools, trusts and conspiracies and discriminations and in violation of said sections 10322 and 10323, has failed and refused, and still fails and refuses, to make answer to such inquiry, under oath of its president, secretary, treasurer or managing officer, as required by said sections, and has failed, neglected and refused, and still fails, neglects and refuses to file or cause to be filed with the said Secretary of State such affidavit, described and required by said sections to be made and filed, although more than thirty days have elapsed since the date of the mailing of such inquiry to respondent corporation by said Secretary of State, as aforesaid.

"And relator further states that the fact of such failure of respondent corporation and its officers to make such answer and file such affidavit in response to said letter of inquiry, within thirty days from the mailing thereof, has been by said Secretary of State duly certified to relator, the said circuit attorney of the city of St. Louis.

"Relator states that by reason of the premises respondent has forfeited its charter and subjected itself to the forfeitures and penalties imposed by sections 10322 and 10327 of said Revised Statutes.

"Wherefore, relator prays that respondent's charter and its certificate of incorporation be declared and adjudged forfeited, void and of no effect, and that the

State ex rel. v. Chemical Works.

costs of this proceeding be adjudged against respondent.

"SEEBERT G. JONES,
"Circuit Attorney of the city of St. Louis.
"FOREST G. FERRIS,
"Assistant Circuit Attorney."

The appellant filed a demurrer to the petition and assigned numerous grounds therefor, which was by the court overruled; and thereupon the defendant answered, the substance of which is as follows:

1. Plaintiff has no legal capacity to sue in manner and form as in said petition attempted;

2. There is a defect of parties plaintiff;

3. This defendant cites the Fourteenth Amendment of the Constitution of the United States as a bar to the allegations of said petition;

4. This defendant cites section 23 of the second article of the Constitution of the State of Missouri as a bar to the allegations of the petition;

5. Defendant for further defense admits that, on the first day of June, 1910, and from that day to the present time, defendant was and still is a corporation duly organized and existing according to law, and that at the said time mentioned defendant was and is doing business and had and has an office in the city of St. Louis, Missouri.

For further answer defendant denies generally each and every allegation of the petition herein, except as above admitted.

By answering over, counsel for appellant waived the demurrer and the attending rulings thereon, which relieves this court of the duty to review the same.

The facts of the case are few and undisputed.

The evidence showed that on the 13th day of June, 1910, the Secretary of State inclosed in an envelope, properly addressed to the appellant, postage prepaid, the letter and the contents thereof. mentioned in the petition, which was duly registered by the postal au-

thorities, and was on the following day, June 14, 1910, delivered to and received by the appellant. The contents of said letter consisted of a sheet of paper, on the one side of which was printed a blank form of the affidavit, required by sections 10322 and 10323, Revised Statutes 1909, to be made by the president, secretary or other managing officer of the appellant company, and by him filed in the office of the Secretary of State, within thirty days from the date of the mailing of said blank by the Secretary of State to the company.

In order to have a clear conception of this case, it will be necessary for us to copy some of the most important statutes involved in the case, and to state the substance of the provisions of certain others, which are incidentally or collaterally involved.

Sections 10322, 10323, 10324 and 10325 read as follows:

Sec. 10322. *Secretary of State to make inquiry—form of affidavit.* It shall be the duty of the Secretary of State, on or about the first day of July of each year, to address to the president, secretary or managing officer of each incorporated company in this State, a letter of inquiry as to whether the said corporation has all or any part of its business or interest in or with any trust, combination or association of persons or stockholders, as named in the preceding provisions of article one of this chapter, and to require an answer, under oath, of the president, secretary or managing officer of said company. A form of affidavit shall be inclosed in said letter of inquiry, as follows:

"AFFIDAVIT.

State of Missouri,   ⎱
County of ———.   ⎰ ss.

"I, ———, do solemnly swear that I am the ——— (president, secretary or managing officer) of the corporation known and styled ———, duly incorporated under the laws of ———, on the ——— day of ———, 19——, and now transacting or conducting business in the State of Missouri.

and that I am duly authorized to represent said corporation in the making of this affidavit, and I do further swear that the said ——————, known and styled as aforesaid, is not now, and has not at any time within one year from the date of this affidavit, created, entered into, become a member of or participated in any pool, trust, agreement, combination, confederation or understanding with any other corporation, partnership, individual, or any other person or association of persons to regulate or fix the price of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning or storm; and that it has not entered into or become a member of or a party to any pool, trust, agreement, contract, combination or confederation to fix or limit the amount or quantity of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning or storm; and that it has not issued and does not own any trust certificates, and for any corporation, agent, officer or employee, or for the directors or stockholders of any corporation, has not entered into and is not now in any combination, contract, or agreement with any person or persons, corporation or corporations, or with any stockholder or director thereof, the purpose and effect of which said combination, contract or agreement would be to place the management or control of such combination, or combinations, or the manufactured product thereof, in the hands of any trustee or trustees, with the intent to limit or fix the price or lessen the production and sale of any article of commerce, use or consumption, or prevent, restrict or diminish the manufacture or output of any article; and that it has not made or entered into any arrangement, contract or agreement with any person, association of persons or corporation designed to lessen or which tends to lessen full and free competition in the importation, manufacture or sale of any article, product or commodity in this State, or under the terms of which it is proposed, stipulated, provided, agreed or understood that any particular or specified article, product or commodity shall be dealt in, sold or offered for sale in this State to the exclusion, in whole or in part, of any competing article, product or commodity.

——————————————,

"(President, secretary or managing officer.)

"Subscribed and sworn to before me, a —————— within and for the county of ——————, this ——————, day of ——————, 19——.

"(Seal)        ——————————.

"And thereupon it shall become the duty of such corporation to make answer to such inquiry by filing or causing to be filed the affidavit prescribed herein. And on refusal to make oath in answer to said inquiry, or on failure to do so within thirty days from the mailing thereof, the Secretary of State shall certify said fact to the prosecuting attorney of the county or the circuit attorney in the city of St. Louis, wherein said corporation is located, and it shall be the duty of such prosecuting attorney or circuit attorney, at the earliest practicable moment, in the name of the State, and at the relation of said prosecuting or circuit attorney, to proceed against such corporation for the forfeiture of its charter or certificate of incorporation, or its right or privilege to do business in this State: Provided, however, that if such corporation shall file the affidavit required by the provisions of this article prior to the rendition of final judgment in said action, the court may assess against such corporation, in lieu of a judgment forfeiting its charter or certificate of incorporation, or its right or privilege to do business in this State, a fine not to exceed five thousand dollars and not less than one hundred dollars; Provided, however, that any time before final judgment, if such corporation shall file or cause to be filed with the Secretary of State the affidavit herein prescribed, the trial court may, in his discretion, and for good cause shown, upon the payment of all costs, together with the attorney's fees of ten dollars, to be paid to the prosecuting attorney or the circuit attorney in the city of St. Louis, remit the penalty herein prescribed.

"Sec. 10323. *Affidavit, by and before whom made.* The affidavit required by this article shall be made by the president, secretary, treasurer or managing officer of such corporation in this State, and shall be made before some person authorized to administer oaths in this State.

"Sec. 10324. *Penalty for false affidavit.* Every person who shall make, or cause to be made, and file or cause to be filed, said affidavit, knowing the facts stated therein to be false, shall, on conviction, be adjudged guilty of perjury, and shall be punished by imprisonment in the penitentiary for a term not exceeding seven years.

"Sec. 10325. *Duty of Secretary of State—production of books.* It shall be the duty of the Secretary of State, at any time upon satisfactory evidence that any company or association of persons duly incorporated under the laws of this or any other State, doing business in this State, has entered into any trust, combination or association, in violation of the preceding sections of this article, to demand that it shall make the affidavit as above set forth in this article as to the conduct of its business. In case of a failure of compliance on the part of the corporation, then the same procedure shall ensue as is provided in section 10322 of this article. *Provided,* that no person shall be subject to any criminal prosecution on account of any matter or thing truthfully disclosed by the affidavit required by this article; and provided further, that in any prosecution or proceeding brought to enforce the provisions of this article, no witness shall be permitted to refuse to answer any question material to the matter in controversy, nor shall be permitted to refuse to produce any books or papers material to such inquiry upon the ground that to produce such books and papers or to answer such question might tend to incriminate him or subject him to a penalty or a forfeiture; but no person shall be subject to prosecution or to any action for a penalty or a forfeiture on account of any transaction, matter or thing concerning which he may testify or produce books or papers."

Upon the reverse side of the sheet of paper previously mentioned, there was printed a blank form of the inquiry, which section 3025, Revised Statutes 1909,

requires the Secretary of State, on or before June 15th of each year, "to send by mail to every stock company or association, . . . which is organized for purposes of gain, or to hold property within this State."

Sections 3026 to 3034, inclusive, provide what shall be stated in reply to said inquiry by said stock companies and associations, and when the same shall be filed with the Secretary of State. Said sections in so far as the appellant is concerned, provide, either literally or substantially as follows:

Section 3026. That every incorporated company, . . . organized under the laws of this State whose capital stock is divided into shares, shall annually, on the 1st day of July, report to the Secretary of State, the location of its principal business office, the name of its president and secretary, the amount of its capital stock, . . . the par value thereof and its actual value at the time of making the report, the cash value of all of its real and personal property situated in this State, on the 1st day of June, immediately preceding the date of the report, and the amount of city, county and State taxes, paid by any such company for the year last preceding the report.

Section 3027 relates to foreign corporations doing business in this State; and consequently it is immaterial to the propositions involved in this case.

Section 3028 requires all corporations doing business in this State, both domestic and foreign, to keep their books and accounts in such manner as to enable them accurately and promptly to comply with the requirements of said section 3025 to 3034, both inclusive; also that no such company shall be exempt from the duty of making such report, because perchance it may not have received the blanks, which section 3025 requires the Secretary of State to send to it and all such companies.

Section 3029 prescribes by what officer of the company the report shall be signed and sworn to.

Since several provisions of section 3030 require consideration at the hands of this court, we will for that reason, and here, copy it in full, which is as follows:

"Sec. 3030. Every incorporation to which sections 3025 to 3034, inclusive, apply, failing, within sixty days from July the 1st in each year to make the report herein provided for, shall be subject to a fine of not less than fifty nor more than one thousand dollars, for each offense, and each succeeding thirty days of such failure shall constitute a separate offense and be subject to a like fine, which said fines shall be cumulative, and one action may be maintained to recover one or more such fines, to be recovered before any court of competent jurisdiction. No suit shall be maintained for any such offense unless brought within six months from September 1st of the year in which the report is due, which date shall be the time when such right of action accrues; and it is hereby made the duty of the Secretary of State, as soon as practicable after the first day of September in each year, to report to the prosecuting attorney of the county in which any such delinquent corporation may be located, the fact of its failure to make the required report, and the prosecuting attorney shall, at the first court term after he receives the report from the Secretary of State, institute proceedings in the name of the State, at the relation of the county, to recover the fine or fines herein provided for, which shall be applied to the county revenue fund, except that for instituting and prosecuting said suits the prosecuting attorney shall receive as his compensation one-fourth of the penalty collected; and in case any such suit shall be taken to either of the Courts of Appeals or the Supreme Court, then the Attorney-General is hereby required to assist the prosecuting attorney, and the Attorney-General shall also be entitled to one-fourth of the amount recovered from the corporation violating the law. The Secretary of State shall,

whenever a corporation makes its report after the time provided by law for the making of such report, certify that fact to the prosecuting attorney.''

Section 3031 has reference to the dissolution of domestic corporations, and the retirement of foreign corporations from the State. Neither of those provisions are material to this case.

Section 3032 requires the assessor of each county in the State, and the president of the board of assessors of the city of St. Louis, to report to the Secretary of State all corporations, domestic and foreign, doing business therein, etc.

Section 3033 requires the Secretary of State to refer all such reports to the Legislature, etc.

And section 3034 confers upon the circuit attorney of the city of St. Louis, the same duties that said sections 3025 to 3033 confer upon the prosecuting attorneys of the various counties of the State.

It was also shown that the appellant in due time and in proper form, made out, swore to and filed with the Secretary of State, the report required by said sections 3025 to 3034, which as previously stated, was printed on the reverse side of the sheet of paper upon which was printed the blank affidavit of innocence of all pools, trusts, combinations, conspiracies, etc., required of said companies by said sections 10322 and 10323; also that appellant declined or refused to make, sign, swear to or file with the Secretary of State, said affidavit of innocence, or as it is sometimes termed the ''anti-trust affidavit,'' required by said last two sections to be made, signed and sworn to by the president or other officer of the company mentioned therein.

The evidence also showed that the Secretary of State, in compliance with the requirements of said section 10322, notified the circuit attorney of the city of St. Louis that the appellant had not, within thirty days from the date of his mailing said inquiry to it or at

any other time, answered the same under oath or otherwise, as was required by said section 10322.

I. Counsel for appellant, in this court, have assigned twenty-five errors; they have, however, apparently abandoned about one-half of them; and we will devote our time to the consideration of the remainder of them.

Attending the first, it is insisted by counsel for appellant that the suit should be dismissed, because the petition shows upon its face a defect of parties plaintiff.

Defect of Parties: Waiver.

If that were true, then counsel should have demurred to it for that reason. In fact, that was one of the grounds stated in the demurrer, as disclosed by the record, which was by the trial court overruled.

If counsel for appellant intended or wished to rely upon that point, they should have declined to plead further and should have stood upon the demurrer, but instead of so doing, they filed an answer to the merits. That action of counsel waived whatever merit there may have been in the question, which cannot be again raised by answer, as was here attempted. This is elementary. [Roberts v. Walker, 82 Mo. 200.]

All objections appearing upon the face of the petition are waived by answering, except first, that it does not state facts sufficient to constitute a cause of action, and second, that the court has no jurisdiction to try the cause. [Sec. 1804, R. S. 1909; Elfrank v. Seiler, 54 Mo. 134.]

We, therefore, rule this question against appellant.

II. It is next insisted by counsel that the petition does not state facts sufficient to constitute a cause of action against the appellant, for the reason that the

249 Mo.—46

suit is brought in the name of Seebert G. Jones, circuit attorney within and for the city of St. Louis, and not in the name of the State of Missouri, which it is claimed is the only party authorized by section 10322, Revised Statutes 1909, to bring the suit. In other words, they insist that the suit should have been instituted in the name of the State and at the relation of the circuit attorney.

**Suit in Name of State.**

By reading said section 10322 it will be seen that it requires the suit to be brought in the name of the State and at the relation of the circuit attorney.

If I correctly understand counsel they do not differ as to what the law is governing this question, but they differ as to the facts. Counsel for appellant insists that the suit is brought in the name of Jones as circuit attorney, and counsel for respondent contend that the record shows that it was brought in the name of the State and at the relation of the prosecuting attorney, as required by said statute.

In stating the case, we copied the petition in full, including caption. The latter reads as follows:

"The State of Missouri, at the Relation of Seebert G. Jones, Circuit Attorney of St. Louis, Relator.

v.

Mallinckrodt Chemical Works, a Corporation, Respondent."

The petition proper, begins by stating: "Comes now Seebert G. Jones, circuit attorney within and for the city of St. Louis in the State of Missouri, and states that the respondent is," etc.

Counsel for appellant insist that the caption of the petition constitutes no part thereof; and that the character of the suit must be determined from the allegations contained in the body thereof, which determines the parties thereto.

In support of this insistence we are cited to the following cases: State to use of J. D. Tapley v. Mat-

son, 38 Mo. 489; Higgins v. Railroad, 36 Mo. 418; Proctor v. Railroad, 42 Mo. App. 124; Headlee v. Cloud, 51 Mo. 301.

The first case mentioned was a suit instituted in. the name of the State to the use of the administrator *de bonis non* of the estate of Joseph Tapley, deceased, against the securities on the bond of the former administrator. In the caption of the petition the plaintiff was designated as the administrator *de bonis non* of the estate of Tapley, deceased, but no allegation of that character was stated in the body of the petition. In other words, the petition failed to state that Tapley had departed this life intestate, that an administrator of his estate had been duly appointed, qualified and took charge of his estate, that said administratorship had ceased and that plaintiff had been appointed administrator *de bonis non* as his successor in office. The insufficiency of the petition was for the first time raised in this court; and after considering the question, the court held that the petition was bad and that because the error appeared upon the face of the record, the judgment of the circuit court should be reversed.

In the case of Higgins v. Railroad, supra, the suit was instituted by an infant through its guardians, to recover the statutory penalty of $5000, for the negligent killing of her father. The caption of the petition was stated in the following language: "Hatty Higgins, Infant, by Eliza Higgins, her Guardian, Plaintiff, v. Hannibal & St. Joseph Railroad Company, Defendant," but no allegation of that character was stated in the body of the petition. On appeal, this court held the petition insufficient for the failure to state in the body of the petition that the plaintiff was the duly appointed, qualified and acting guardian of the infant plaintiff.

In Headlee, Admr., v. Cloud, supra, the plaintiff in the caption of the petition described himself as the

public administrator, but failed to state in the body thereof that he was the duly elected, qualified and acting administrator of the estate of the deceased, etc. The defendants demurred to the petition, which was by the circuit court sustained; and upon appeal, this court held the petition was insufficient and affirmed the judgment.

In the case of Proctor v. Railroad, supra, the railroad was in the hands of the defendants, receivers. In both the caption and the body of the petition, it was stated that they were receivers thereof, that they had been duly appointed as such by Judge Brewer, and that they were in charge of, and were operating the railroad at the times complained of, etc. Service was had upon the station agent, and the receivers moved to dismiss for the reason that service was not had upon them personally. While this case has no special bearing upon the case at bar, yet it recognizes the doctrine announced by this court in the cases previously cited and considered; and if we are to be controlled by the rule therein announced, then the judgment of forfeiture rendered by the circuit court against the appellant will have to be reversed for they are directly in point.

While I have not found any case overruling the cases mentioned in terms, yet the later reports are full of cases holding to the contrary. The later cases hold that even though it be conceded that a suit was brought in the name of the wrong party, nevertheless, the defendant would be in no position to question that error in this court, for the reason it was apparent upon the face of the petition, and it should have been raised by demurrer, and having failed to so do the error was waived by answering to the merits.

This question was before this court in the case of State ex rel. v. Fidelity and Guaranty Co., 236 Mo. 352, l. c. 365, where many of the authorities are reviewed, and the contrary rule announced.

The same rule is announced by this court in the case of Ashton v. Penfield, 233 Mo. 391, 1. c. 417.

These cases are in harmony with section 1794, Revised Statutes 1909.

The petitions in the case of State ex inf. v. Evans, 166 Mo. 1. c. 349, and State ex inf. v. Tobacco Co., 177 Mo. 1. c. 6, are substantially the same in form as this one.

We are, therefore, of the opinion that the earlier cases cited are erroneous, and should be overruled; also that this insistence of counsel for appellant is not well founded.

III.    It is next contended that the petition is defective because the suit should have been brought "for the use of the city of St. Louis, in accord with the Constitution (section 8, article 11 thereof) since all such fines and penalties go direct to the school fund. The provision (section 10304) in this law for payment into the State Treasury is unconstitutional."

To Use of School Fund.

This contention is untenable for two reasons: first, because this error, if error it is, was waived by answering to the merits; and what has been stated in paragraph two of the opinion regarding a kindred question is equally applicable and controlling here; and, second, even though it be conceded that the provision of section 10304, which directs all fines and penalties collected under and in pursuance to chapter 98 of the Revised Statutes of 1909, shall be paid into the State Treasury, is unconstitutional, null and void, and that it should be paid to city of St. Louis, for the use of the school fund, as provided for by said section 8 of the Constitution, still it would not necessarily follow therefrom that this suit should abate or be dismissed for that reason. That provision of the section might well be declared unconstitutional, and in no manner would

it affect or nullify the remaining provisions thereof, or any other section of that chapter.

But independent of that, whatever disposition will be made of the fines and penalties that may be collected from appellant, is a matter for future consideration by those who may make claim to them.

However, in passing, it may not be out of place to state that this court has in a number of cases of this character ordered fines of this character paid into the State Treasury, and has thereby recognized the constitutionality of said section of the statute.

IV.   The fourth assignment of error is stated in this language:

"The trial court erred in overruling the demurrer because there is no allegation in the petition that defendant ever had any connection with any

Allegation of Trust Agreement.

contract or understanding or other agreement illegal under the law against pools, trusts and monopolies.   The omission to file the affidavit of innocence, without such allegations and proof, is no ground to forfeit the charter of defendant.   [R. S. 1909, sec. 10304.]    While the terms of section 10322 may appear at first glance to warrant forfeiture, they are to be read along with sections 10304 *in pari materia*, and together the paramount intent is to forfeit for breach of the law.   Want of affidavit warrants beginning of suit (if the requirement be valid) but that alone is not sufficient to forfeit the charter."

There is no question but what counsel for appellant are correct in the contention that all statutes standing *in pari materia* should be read and construed together in order to get at the full and clear design of the Legislature.   We have so held in numerous cases, and especially in the following: State ex rel. v. Patterson, 207 Mo. 129, l. c. 144; State ex inf. v. Standard Oil Co., 218 Mo. 1, l. c. 354 to 357.

With that rule of statutory construction in mind, we have carefully considered all of chapter 98, Revised Statutes 1909, consisting of five articles; and after doing so we are fully satisfied that article three thereof, the one governing this case, is complete within itself, in so far as this case is concerned, and that it was the design of the Legislature, as therein expressed, to discourage the formation of pools, trusts and combines; also to compel them to disclose the existence of all such pools, trusts and combines, if such existed, the knowledge of which would lie peculiarly within the minds of the officers thereof mentioned in the statute, by requiring such companies to make and file the annual affidavits, and the imposition of the penalties and forfeitures therein mentioned, which are independent of the sworn reports, penalties and forfeitures mentioned in the first article of this chapter.

The penalties and forfeitures mentioned in the first articles have reference to those which are imposed for the actual formation of pools, trusts, conspiracies and combinations in restraint of trade, etc., while those mentioned in article three refer to those imposed for failure to file the affidavit, and are enforcible even though the company may never have entered into any such pool, trust, conspiracy or combination mentioned in the first article.

If the contention of counsel for appellant is correct, namely, that article three imposes no penalties, then there would be no penalty enforcible against a company for a failure to make and file the affidavit required thereby, for the reason that the penalties and forfeitures prescribed by article one, in so many terms, are imposed for the unlawful formations of pools, trusts, etc., and for failure to make and file the report required thereby with the Secretary of State.

This article like all other statutes, in order to make it effectual, the Legislature prescribed by sections 10322 and 10327 contain penalties which should

be adjudged against any such company for its failure to make and file the affidavit required.

The penalties and forfeitures prescribed by section 10322 consist of "a forfeiture of its charter or certificate of incorporation, or its right or privilege to do business in this State." And by section 10327, it is provided, "In all suits instituted under this *article* to forfeit the charter of corporations, or to forfeit the right of a corporation to do business in this State where a judgment of forfeiture is obtained . . . the court shall allow the circuit attorney . . . a fee of not less than $25 nor more than $500."

From the foregoing observations it is perfectly clear, as previously stated, that this article is complete within itself; that is, it imposes certain duties named therein, upon all domestic and foreign corporations doing business in this State, and prescribes the manner in which those duties must be discharged, the mode of prosecution in case they fail to do so, and the punishment to be inflicted in case they are convicted of such failure.

We have also considered said section 10304, cited by counsel, which is one of the sections of the statute composing article 1 of said chapter 98. That chapter is entitled "Pools, Trusts, Conspiracies and Discriminations," and said article is entitled, "Definitions, Procedure and Penalties." Sections 10298 to 10301, inclusive, thereof, clearly define each and all of said terms. Section 10302 makes it a felony for any person to violate any of the provisions of those sections. Section 10303 designates the courts in which the prosecutions shall be brought and by what officers they shall be instituted, etc., and section 10304 prescribes the fines and forfeitures which shall be imposed against all domestic and foreign corporations doing business in this State, for having violated the provisions of any of the sections of that *article*.

From this, it is also seen that this article is complete in itself and resort to other provisions of the statutes is not necessary for a successful prosecution and punishment of any such company which may be adjudged guilty of violating any of the provisions of said article.

From this consideration of articles one and three, of said chapter 98, it is obvious that each is complete in itself and independent of each other as to penalties and forfeitures, and consequently said section 10323 of article 3, is not modified or controlled by section 10304 of article 1 as insisted by counsel for appellant.

Moreover, by reading the two sections it will be seen that the punishment prescribed by each widely differ, and neither is made to depend upon the other, nor is it provided that the one shall be added to or subtracted from the other. But as previously stated, by each are separate punishments imposed for separate offenses.

We, therefore, decide this question against the appellant.

V. It is next insisted that said section 10322 requiring the appellant to file with the Secretary of State the anti-trust affidavit mentioned in the petition is an *ex post facto* law, and violative of section 15 of article 2, of the Constitution of this State.

**Ex Post Facto Laws.**

Counsel have not indicated in what manner this section of the statute violates said section of the Constitution, and I have been unable to detect any conflict between them.

The record shows that the appellant was organized and had existed under the laws of this State for many years prior to the date it was required to make the affidavit in question and file it with the Secretary of State, and upon investigation I find that said section 10322 was enacted in the year 1907, some three

years prior to the date when the appellant was required to make and file said affidavit; and by reading said section 10322, it will be seen that it only required the affidavit to state that the company had not at any time within one year from the date thereof (which if filed, should have been dated about August 1, 1910) participated in any of the forbidden matters stated in said article three. From this it appears that the said statute was in force for some two or three years prior to the period of one year which the affidavit would have covered, had it been made and filed as required by law.

An "*ex post facto* law" is "one which makes an action done before the passage of the law, criminal, which was innocent when committed and which punishes the individual who committed it; or which aggravates a crime and makes it greater than it was when committed; or which changes the punishment and inflicts greater punishment than the law annexed to the crime when committed." [Calder v. Bull, 3 Dallas (U. S.) 386; Ex parte Bethurum, 66 Mo. 545, l. c. 548.]

If we test this statute by this definition of an *ex post facto* law, it will be seen that it does no violence to said section of the Constitution, for it neither makes an act done prior to its passage criminal, which was innocent when committed, nor does it aggravate a crime or make it greater than it was when committed, nor does it change the punishment or inflict greater punishment than the law annexed to the crime at the time it was committed. I say this for the reason that the wrong complained of in the petition was the failure of appellant to state under oath, as required by said section 10322, that it had not done any of the things therein prohibited, and declared to be unlawful, within one year immediately preceding the date of the affidavit required thereby to be filed, which would have been for the year beginning on or about August 1, 1909, and ending on or about August 1, 1910, the first

day of which was about two years subsequent to the passage of the statute in question, and therefore the statute was passed two years prior to the date of the wrong complained of in the petition.

We are, therefore, of the opinion that section 10322 in no manner violates said section 15 of the Constitution.

VI. Counsel next insist that the petition does not state a cause of action against the appellant for the reason- that it is neither a proceeding **Procedure: Quo Warranto.** by *quo warranto,* ancient or original, or by information in the nature of *quo warranto,* which it is claimed was essential to obtain a forfeiture of the franchise of a corporation organized under the laws of this State.

There would have been much force in this insist-ence had the Legislature simply declared the matters complained of to be unlawful, without prescribing the remedy therefor, for in that case there would have been no remedy known to our law by which that result could have been obtained, except by *quo warranto* or by an information in the nature thereof; but the Legislature did not stop at the point suggested. It proceeded further and prescribed in detail the remedy, even the courts in which such prosecutions should be brought, the officers by whom they should be instituted, the name of the plaintiff and at whose relation they should be instituted, the acts which should constitute the offense as well as the kind of judgment that should be rendered, and the fines and forfeitures that should be imposed upon the offending parties. Also what steps the guilty company might take if it saw proper to take any, after the institution of the prosecution, and before final judgment was rendered to appease the law and be restored to its former legal status.

Under these ample provisions of the statute, it was wholly unnecessary for the circuit attorney to have resorted to a writ of *quo warranto,* or to an information in the nature thereof. The majesty of the law could have been, and was, as completely vindicated under the provisions of this article, as if resort had been had to *quo warranto* or to an information in the nature thereof.

This insistence is without merit and is ruled against appellant.

VII.    Counsel also insist that the petition does not state a cause of action against the appellant, for the reason that it was a physical impossibility for it to have made the affidavit mentioned therein.

This insistence is predicated upon the further contention that according to the provisions of said section 10322, the affidavit "could only be made in a *county,* and no authority to alter the form in any respect is given by the law to company officers in *St. Louis City.*"

County.

This insistence is untenable, for the reason that paragraph nineteen of section 8057, Revised Statutes 1909, provides that where the word "county" is "used in any law, general in its character to the whole State, the same shall be construed to include the city of St. Louis, unless such construction be inconsistent with the evident intent of such law, or of some law specially applicable to such city."

The application of this statute to the question in hand can in no manner be considered as being inconsistent with the meaning of, and the object to be accomplished by, article three of chapter 98 of the statutes, nor with any law which is specially applicable to the city of St. Louis.

This court has recognized and given force to this rule of construction in so many cases, that it can no longer be considered an open question.

VIII.  Counsel for appellant challenge the consti-
tutionality of said section 10322, the contention be-
ing  that it violates the Fourteenth Amendment of
the Constitution of the United States, in that it de-
nies to the appellant and its officers the equal protec-
tion of the laws by requiring them to make the affi-
davit mentioned therein, and at the same time exempt-
ing therefrom all "partnerships, individuals or as-
sociation of individuals who may be engaged in the
same character of business."

This precise question was presented and ruled
on adversely to the contention of appellant in the case
of State ex inf. v. Standard Oil Co., 218 Mo. 1.  At
page 368, we said:

"Their position is that those sections are in
violation of the first section of the Fourteenth Amend-
ment to the Constitution of the United States, in that
while they denounce the same acts, whether commit-
ted by individuals or individuals and corporations,
they impose upon the latter a greater and different
punishment from that imposed upon individuals.

"In one sense that may be true, but it is not true
in a legal sense.

"A corporation is a legal fiction—a creature of
the law.  It accepts its charter and corporate fran-
chises with a tacit agreement or understanding that it
will exercise the powers granted to it by the State, and
none other; and that if it misuses those powers, or
usurps powers not so granted, it will surrender or for-
feit its charter, with all corporate franchises.  That
the State has the power to enforce this agreement, or
law of forfeiture, is not questioned by respondents,
but they insist that it is a different and greater pun-
ishment than is imposed upon an individual for the
commission of the same offense.  In answer to that,
it may be said that an individual is a natural person,
created by his Maker, and not by law, and, therefore,
has no franchise to exercise or to forfeit, consequently

the same punishment, if you so term it, could not, in the very nature of things, be measured out to the individual which should be measured unto a corporation.

"While it is true, to forfeit the charter of a corporation for usurpation of power is equivalent to taking its life, as it were; but we suppose it will not be seriously argued that, because the statute does not demand the life of the individual, as it does of the corporation, as a punishment for his violation of the law, the law should and must be declared unconstitutional and void upon that ground. And, upon the other hand, where a statute denounces certain acts, whether committed by individuals or corporations, or both, it should not be declared unconstitutional because it provides for imprisonment of the former and a fine, or forfeiture of the latter's charter, as punishments for their violation of the statute. But if the contention of counsel for respondents is sound, then any individual could form an unlawful combination in restraint of trade with any corporation, and when proceeded against for such unlawful conduct either one or both of them could interpose the unconstitutionality of the statute, because the punishment prescribed against each is not the same but different. And we might add that, if their position is tenable, then the Legislature would be powerless to provide for the imprisonment of the one because it could not imprison the other; nor could it provide for the forfeiture of the charter of the corporation, because the individual would have none to forfeit, *ergo,* there is no punishment the Legislature could provide, excepting a fine against each. Such a contention regarding the proposition here involved if followed to its logical conclusion would lead to an absurdity, and, at the same time, shows the unsoundness of respondents' contention."

And in passing, we might state that experience has taught the courts, both State and Federal, that

fines alone are ineffectual to destroy pools, trusts, conspiracies and combinations in restraint of trade in limiting production and in fixing and maintaining prices. .

In order to accomplish that end, the strong arm of the criminal law will have to be resorted to, and the guilty be incarcerated.

That case was carried to the Supreme Court of the United States, and was by that court affirmed.

Those cases, as previously stated, decide this question against appellant's contention here, and we see no reason for changing our views of the law regarding the same.

IX. Counsel for appellant also contend that said section 10322 is unconstitutional, null and void, for the reason that it violates that section of the Constitution which provides that "no person shall be compelled to testify against himself in a criminal case."

Their position is stated in this language:

"The trial court erred in not finding for defendant because the requirement of the affidavit of innocence is not validated by the supposed immunity defined in section 10325, because as to the affidavit the immunity is not complete and not commensurate with the constitutional guaranty to the officers of the defendant against the giving of a self-incriminating affidavit." . In support of this contention counsel cite: · State ex rel. v. Hardware Co., 109 Mo. 118; ·Counselman v. Hitchcock, 142 U. S. 547, followed and approved in Glickstein v. United States, 222 U. S. 141; and Edelstein v. United States, 149 Fed. 642.

*Self-incrimination.*

We have carefully considered these cases and are of the opinion that they are not controlling in this case.

· In the first case cited, there was no statute of immunity whatever exempting the officer of the corpo-

ration from prosecution for any crime the affidavit might disclose he was guilty of. In that case, this court very properly held, that the section requiring the affidavit to be made, and prescribing a punishment for a failure to do so, was violative of that provision of the Constitution which provides that no person shall be compelled to testify against himself. It was in consequence of that decision that the Legislature enacted section 10325, which provides that "no person shall be subject to any criminal prosecution on account of any matter or thing truthfully disclosed by the affidavit" mentioned in section 10322.

We held in the Standard Oil case, supra, that the immune statute there under consideration was valid and sufficiently broad and comprehensive to exempt from prosecution the parties therein mentioned, from all crimes they may have disclosed by the proceedings had in that case. In discussing that question (p. 375), the court used this language:

"Section 8989, Revised Statutes 1899, granted immunity to all the witnesses who were produced by respondents and who testified in compliance with the order of the court. No witness can avail himself of section 23 of article 2 of the Constitution of 1875, nor of the Fifth Amendment of the Constitution of the United States, as to giving oral testimony, because said statute grants him immunity from prosecution; nor can he set those constitutional provisions up against an order for the production of books and papers, as the same statute would equally grant him immunity in respect to matters provided thereby. [Hale v. Henkel, 201 U. S. l. c. 69 to 73.]

"Nor was it intended by section 11 of article 1 of the Constitution, nor the Fourth Amendment of the Constitution of the United States, known as the search-and-seizure clauses, to interfere with the power of courts to compel the production upon trial of docu-

mentary evidence under a subpoena *duces tecum.* [Hale v. Henkel, supra, l. c. 73.]

"While an individual may lawfully refuse to answer incriminating questions unless protected by an immunity statute, a corporation is a creature of the State, and there is a reserved right in the Legislature to investigate its contracts and find out whether it has exceeded its powers.

"There is a distinction between an individual and a corporation; the latter, being a creature of the State, has no constitutional right to refuse to produce its books and papers in court for examination in the trial of a proceeding by the State against it; nor can the officer in charge of the corporation charged with a violation of the statutes plead the criminality of the corporation as a refusal to produce the books. [Hale v. Henkel, supra, pp. 74 to 76.] The rule above announced has the sanction of the highest court in the land and was applied in a criminal prosecution, and *a fortiori* should the same rule apply to a civil proceeding like the case at bar."

If we correctly understand counsel, they do not challenge the validity of section 10325, but insist that its provisions are not as broad as is the constitutional guaranty against self-incrimination, or to exempt the officer of appellant from prosecution for every crime the affidavit in question might disclose he might be guilty of. In our opinion this insistence is not well founded. The material part of that section is as follows:

"Section 10325. . . . In case of a failure of compliance on the part of the corporation, then the same procedure shall ensue as is provided in section 10322 of this article: Provided, that no person shall be subject to any criminal prosecution on account of any matter or thing truthfully disclosed by the affidavit required by this article; and provided further,

that in any prosecution or proceeding brought to enforce the provisions of this article, no witness shall be permitted to refuse to answer any question material to the matter in controversy, nor shall be permitted to refuse to produce any books or papers material to such inquiry upon the ground that to produce such books and papers or to answer such question might tend to incriminate him or subject him to a penalty or a forfeiture; but no person shall be subject to prosecution or to any action for a penalty or a forfeiture on account of any transaction, matter or thing concerning which he may testify or produce books or papers.''

The first proviso of this section, namely, that no person shall be subject to any criminal prosecution on account of any matter or thing truthfully disclosed by the affidavit required by this article, is the immunity that is granted to the officer of the corporation making it and which of course presupposes that he had thereby disclosed some matter or thing that he and the company had previously done in violation of said chapter 98, commonly known as the ''Anti-Trust Laws'' of the State; while the second refers to the immunity that is granted to any and all officers, agents, employees and others who may be witnesses in any proceeding, which might be brought against any such ''corporation to forfeit its charter or certificate of incorporation or its right or privilege to do business in this State,'' for any reason known to said laws.

If we bear in mind the different crimes to which these two immunities refer, much light will be shed upon the apparent confusion that seems to rest in the minds of the learned counsel for appellant. Their position is thus stated: ''The immunity extended to a witness in testifying or producing books or papers, in a prosecution or proceeding to enforce the provisions of this article reaches anything which might tend to incriminate him or subject him to a penalty or for-

feiture; whereas, in the first proviso [referring to disclosures by such an affidavit of innocence as is our immediate concern at present] the immunity extends only to any criminal prosecution and does not even preclude the use of such affidavit in a proceeding to recover a penalty or forfeiture, as in the second proviso ordained.'' In other words, their contention is, that the words ''criminal prosecution,'' as used in the statute, have a much more restricted meaning than the words ''criminal case'' or ''criminal cause'' of the Constitution.

The inference drawn therefrom is, that the affidavit required by section 10322 might disclose some possible crime, which the immunity granted by section 10325 would not cover, and they suggest, for instance, that the affidavit might disclose some crime which might not be covered by the immunity granted under the first proviso which extends only to ''criminal prosecutions,'' which would not preclude its use in a proceeding to recover a ''penalty or forfeiture'' mentioned in the second.

This position is untenable, for the reason previously stated, that the first proviso grants immunity from prosecution for all matters and things which might be ''disclosed by the affidavit required [to be made] by this article,'' and if we turn to section 10322, the section requiring the affidavit to be made, it will be seen that it prescribes what the affidavit shall contain, namely, all the matters and things which ''article one of this chapter'' prohibits corporations and certain others from doing, and which, by turning to sections 10302 and 10304, it will be seen include penalties and forfeitures therein, and being so included by express words, the affidavit therefore could not (if otherwise competent, which I seriously doubt) be used either under the first or second proviso. So says the statute, and so say we.

X.   The last insistence presented by counsel, and supported by argument, is that the finding of the trial court should have been for the appellant for **Separate Blanks.** the reason that the Secretary of State did not serve upon it two separate and distinct blank affidavits or reports, the one required by section 3025 to 3034, both inclusive, and the other by section 10322, all Revised Statutes 1909.

The record shows that both of said blanks were printed upon one piece or sheet of paper; one of which was printed upon one side thereof, and the other upon the other side.

Section 3025 required the Secretary of State to send the one mentioned therein, on or before June 15th of each year; and section 10322, required him to send the one therein mentioned on or about July 1st of each year.

The record shows that said sheet of paper, with those blank affidavits or reports so printed thereon was by the Secretary of State, sent to the appellant by registered letter, on June 13, 1910, and that it was by the latter received on June 14th, the following day.

The law required the appellant to execute and return this annual report to the Secretary of State within sixty days from July 1st of each year, and the anti-trust affidavit within thirty days from the date the Secretary of State mailed the blank to it.

The record also shows that the appellant, by its properly constituted officer, duly executed the former and returned the same to the Secretary of State on the 22nd day of July, 1910, with the blank affidavit printed on the reverse side thereof, as previously stated, unexecuted.

Upon the receipt of said paper the Secretary of State filed said corporation report on said 22nd day of July, and noted said facts upon the records kept in his office for that purpose; and thereupon, the same day, the Secretary of State remailed said paper, with

the said executed report on the one side and the blank anti-trust affidavit on the other, back to the appellant for execution. Said paper was placed in an envelope, properly addressed to appellant, postage prepaid and deposited in the United States post office at Jefferson City, Missouri.

Appellant declined to execute this affidavit as required by said section 10322, and assigned as a reason therefor, that it did not believe that it was obliged to so do.

In our opinion there is no merit in this contention.

The blanks were in proper form and were sent to appellant in due time, and were by it accepted the next day, which gave it ample time to execute and return them to the Secretary of State, as provided for by said statutes.

Appellant knowingly and intentionally refused to make the anti-trust affidavit, and its secretary, Mr. Oscar L. Biebinger, testified that the reason for not making it was, that, ''I did not believe we were obliged to answer it.''

Appellant having knowingly elected to violate the law, there remains nothing to be done, except to enforce the penalties and forfeitures prescribed by the statute for such conduct.


XI. If I correctly understand counsel for appellant, they requested, in oral argument of the cause in this court, that, in case we should hold that **Filing Affidavit After Judgment.** the company was guilty of the charges made in the petition, this court now permit it to make the affidavit required of it by section 10322, upon such terms as we might deem just and proper under the circumstances. But counsel have made no such request in their brief or printed argument, nor have we been cited to any statute or other law which authorizes any such procedure.

After some investigation we find that section 10322 prohibits any such procedure. That section of the statute after providing "for the forfeiture of its charter or certificate of incorporation, or its right or privilege to do business in this State," contains this provision:

"Provided, however, that if such corporation shall file the affidavit required by the *provisions of this article prior to the rendition of final judgment in said action,* the court *may* assess against such corporation in lieu of a judgment forfeiting its charter or certificate of incorporation, or its right or privilege to do business in this State, a fine not to exceed five thousand dollars and not less than one hundred dollars: Provided, however, that any time before final judgment, if such corporation shall file or cause to be filed with the Secretary of State the affidavit herein pre-scribed, the trial court may, in its discretion, and for good cause shown, upon the payment of all costs together with the attorneys' fees of ten dollars, to be paid to the prosecuting attorney or the circuit attorney in the city of St. Louis, remit the penalty herein prescribed."

The only leniency this statute extends to a corporation which has violated the provisions thereof, is irrevocably withdrawn after the final judgment of forfeiture has been rendered by the trial court. This is in keeping with the strenuous legislation that has been enacted by the Legislature of this and practically of all the other States of the Union; also by the Congress of the United States.

They seem to be determined to put an end to all pools, trusts, conspiracies and combinations in restraint of trade, limiting production and in fixing and maintaining prices.

While some of those provisions seem to be rather severe, yet they have not, so far, been sufficient to

break up those combinations; and when one of them knowingly and intentionally refused to obey the law of its creation, I am not prepared, under present conditions, to say that it is entitled to much consideration.

Finding no error in the record, the judgment of the circuit court is affirmed. All concur except *Bond, J.,* who dissents in separate opinion.


## DISSENTING OPINION.


BOND, J.—I am constrained to dissent to the opinion of the majority of the court in this case. As I understand the opinion it concedes that unless certain cases cited therein are overruled, the petition in this case states no cause of action; and, hence, would not warrant the judgment of the trial court. I doubt the wisdom of repudiating these rulings. If the theory can obtain, after a full consideration of all the applicatory statutes, that the simple omission to file a prescribed affidavit is sufficient ground for forfeiting the charter of the defendant, then this court, under its statutory power (R. S. 1909, sec. 2083) to render such judgment as ought to have been rendered in the trial court, should permit the appellant, as requested in its reply brief, to comply with the formality of filing the affidavit under the authority of section 10322, Revised Statutes 1909.

There is not the faintest suggestion in this record that the charter or business of the defendant corporation exists or is conducted in violation of the anti-trust law of this State. Nor is there any proof, even arising to the dignity of an inference, to be found in the record which discloses that the failure of the officer of the defendant company to make the affidavit prescribed was caused by any other motive than a declination to answer inquiries which his learned counsel

(as stated on the argument) advised him were inquisitorial and unconstitutional.

Under these circumstances I think the case should be reversed and remanded to the circuit court with directions to permit the filing of the affidavit and to enter judgment in the matter according to the provisions of section 10322, Revised Statutes 1909.