## EX PARTE BETHURUM.

1. **Ex post Facto Laws.** The phrase defined (*following Calder v. Bull*, 3 *Dallas* 386.)

2. **Retrospective Laws.** The constitutional prohibition against the enactment of laws retrospective in their operation, relates to such as concern civil rights and remedies, and not such as concern crimes and punishments or criminal procedure. Constitution of 1875, Art. 2, ₰ 18.

3. **Habeas Corpus:** CORRECTION OF JUDGMENTS IN CRIMINAL CASES:

35

CONSTITUTIONAL LAW. The act of March 1st, 1877, (Sess. Acts, p. 261,) requiring any court to which application is made by *habeas corpus* for the release of any prisoner confined under a sentence which is erroneous as to time or place, to sentence him to the proper place of imprisonment or for the correct length of time, authorizes the correction of erroneous sentences passed previous to that date, and is not void either as an *ex post facto* law or as retrospective in its operation.

4. **Jurisdiction and Practice in Supreme Court in Habeas Corpus Cases.** The foregoing act is not void as conferring original jurisdiction on the Supreme Court. That court has, under the constitution, original jurisdiction in *habeas corpus* cases, and the act is substantially an amendment to the *habeas corpus* act, prescribing the practice in such cases.

*Petition for Habeas Corpus.*

*N. C. Kouns* for petitioner insisted that the act of March 1st, 1877, ought not to be construed as applying to sentences previously passed, as such construction would make it obnoxious to the inhibition of the constitution against *ex post facto* and retrospective laws, citing *Costin v. Corporation of Washington*, 2 Cranch C. C. 254; *U. S. v. Hall*, 6 Cranch 171; *Calder v. Bull*, 3 Dall. 386; Cooley Const. Lim. 272, 370; *Hope Mut. Ins. Co. v. Flynn*, 38 Mo. 483.

2. The Supreme Court is a constitutional tribunal, and a statute cannot enlarge its constitutional powers so as to authorize it to sentence a criminal at all, or to modify a criminal sentence, except upon error or appeal. This statute undertakes to give this court power to impose an original sentence where the trial court failed to do so.

*J. L. Smith*, Attorney-General, for the respondent, insisted that the act is not an *ex post facto* law, according to the definition given in *Calder v. Bull*, 3 Dall. 386, and adopted in *Fletcher v. Peck*, 6 Cranch 87; *Ogden v. Saunders*, 12 Wheat. 213, 266; *Satterlee v. Mathewson*, 2 Pet. 380; *Cummings v. Missouri*, 4 Wall. 277; *ex parte Garland*, 4 Wall. 333; *Huber v. Reily*, 53 Penn. St. 115; and that the

power given by it is virtually part of the *habeas corpus* act, and is welded on to the jurisdiction conferred by that act.

HENRY, J.—At the November term, 1875, of the Buchanan circuit court, Bethurum was tried and convicted of forgery in the third degree, and sentenced to imprisonment in the penitentiary for a term of eight years, the maximum punishment for that offense being fixed by law at seven years imprisonment in the penitentiary, and he now asks to be discharged from said imprisonment on the ground that it was illegal. It is conceded that under the decisions of this court, in *ex parte Page*, 49 Mo. 291; *ex parte Jilz*, 64 Mo. 205, the petitioner is entitled to his discharge, if the act of the General Assembly, approved March 1, 1877, entitled "An act to prevent the discharge of persons by the *habeas corpus* act, who have been convicted of crime and erroneously sentenced," be an *ex post facto* law, or retrospective in its operation, in the sense in which these terms are used in our State constitution. By the terms of the act, it relates to sentences which had been pronounced when it was enacted, as well as to those thereafter to be pronounced. The preamble, reciting that many persons had been erroneously sentenced, and were liable to be discharged at any time, by virtue of the provisions of the *habeas corpus* act, declared the existence of an emergency requiring the act to be in force and to take effect from and after its passage. The first section provided that "No person shall be entitled to the benefit of the provisions of the *habeas corpus* act, for the reason that the judgment, by virtue of which such person is confined, was erroneous as to time or place of imprisonment; but in such cases it shall be the duty of the court, or officer, before whom such relief is sought, to sentence such person to the proper place of confinement, and for the proper length of time, from and after the date of the original sentence, and to cause the officer, or other person having such prisoner in charge, to convey him forthwith to such

designated place of imprisonment." The act took effect from and after its passage.

By the constitution of the United States, the several States are inhibited from passing "any *ex post facto* law, or law impairing the obligation of contracts." By the 18th section, article 2, of the constitution of this State, the General Assembly is prohibited from passing any *ex post facto* law, or law impairing the obligation of contracts, or retrospective in its operation. With regard to *ex post facto* laws, and laws impairing the obligations of contracts, there was no necessity for an inhibition in our State constitution, for under the prohibition in the constitution of the United States, all such laws enacted by the Legislature of a State, would be inoperative and void; but there was no such inhibition in the Federal constitution in regard to retrospective laws, and therefore that clause in the section is to be construed so as to effectuate the purpose of the framers of the constitution. When words, which have long had a technical meaning, as used in statutes and judicial proceedings, are employed in constitutions and statutes, they are to be understood in their technical sense, unless there be something to show that they were employed in a different sense.

The terms *ex post facto* and retrospective, as employed in statutes and constitutions, had acquired a definite, legal meaning, long before the adoption of our constitution. In *Calder v. Bull*, 3 Dallas 386, Chase, J., said: "The expressions '*ex post facto* laws,' are technical; they had been in use long before the revolution, and had acquired an appropriate meaning by legislators, lawyers and authors." Blackstone in his Commentaries, 1 Vol. 46, thus defines the meaning of the expression, "*ex post facto* law:" "When, after an action, indifferent in itself, is committed, the Legislature then, for the first time, declares it to have been a crime, and inflicts a punishment upon the person who has committed it." In *Calder v. Bull*, 3 Dallas 386, Chase, J., declared an *ex post facto* law to be one which

makes an action done before the passage of the law, criminal, which was innocent when committed, and punishes the individual who had committed it; or which aggravates a crime and makes it greater than it was when committed; or which changes the punishment and inflicts greater punishment than the law annexed to the crime when committed; or which alters the legal rules of evidence, and makes less or different testimony than the law required at the time of the commission of the offense, sufficient to convict the offender. It will be perceived that Judge Chase gave a much broader signification to the expression than was attached to it by Blackstone, and the explanation given in *Calder v. Bull,* has been accepted generally, and we believe everywhere in the United States, without an exception, where the question has been before the courts. The act of March, 1877, did not make an act criminal which was innocent before its passage; it did not make the crime, of which defendant was found guilty, greater than when he committed it; it did not change the punishment and inflict greater punishment than the law annexed to the crime when he committed it; nor did it alter the legal rules of evidence, and make less or different testimony than the law required when he committed the offense, sufficient to convict him. It merely provides that if sentenced to confinement in a place different from that required by law, the court before whom he might be brought on a *habeas corpus,* should sentence him to confinement in the proper place, and if sentenced for a longer term than the law authorized, the court should sentence him for the proper time. It simply provided for the correction, by such court, of an error patent upon the record. It is not an "*ex post facto* law," as that expression had been explained by the law writers, and in numerous adjudged cases, before our constitution was adopted.

Is it a retrospective law? All *ex post facto* laws, and laws impairing the obligation of contracts are, literally, retrospective; but not in the technical sense of that term.

*Ex post facto* laws relate exclusively to crimes and punishments, and criminal procedure. A "law retrospective in its operation," as the phrase is employed in our bill of rights, is one which relates to civil rights, and proceedings in civil causes. The inhibition as to retrospective laws, in regard to criminal transactions, was full and complete in the inhibition against the passage of *ex post facto* laws, but as there was nothing in the federal constitution to prohibit the Legislature from enacting retrospective laws, and doubts had been expressed as to the power of the Legislature to pass such laws, when the State constitution did not forbid it, that clause was inserted in our constitution to make certain what was, before, in some doubt, and is to be found in the constitutions of several of the other States, while others do not contain any such provision. A retrospective law, as the phrase is employed in our constitution, is one which relates exclusively to civil rights and remedies. In *Rich v. Flanders*, 39 N. H. 312, Sargeant, J., delivering the opinion of the court, said, after citing many cases: "From all these decisions we conclude that the word 'retrospective,' as used in our bill of rights, and as generally used in a legal sense, is a technical term, not to be understood in a literal sense, but one that must receive, and has received, a legal interpretation." Again he says: "As we understand the construction given by our courts to the last clause of our bill of rights, which provides that no retrospective law shall be made 'for the punishment of offenses,' it is held to be synonymous with the clause in the United States constitution, which provides that no State shall pass 'any *ex post facto* law.'" In *Woart v. Winnick*, 31 N. H. 473, Richardson, C. J., speaking of the same clause in the New Hampshire constitution, observes: "The most attentive examination we have been able to give the clause in the constitution we are now considering, has satisfied us that it was intended to prohibit the making of any law prescribing new rules for the decision of existing causes, so as to change the ground of the action, or the nature of the defense."

By the constitution of Texas it was provided that: "No retrospective or *ex post facto* law, or law impairing the obligation of contracts, shall be made." And in *De Cordova v. The City of Galveston*, 4 Tex. 470, Hemphill, C. J., said: "*Ex post facto* laws, and such as impair the obligation of contracts, are retrospective; but there may be retrospective laws which are not necessarily *ex post facto*, or which do not impair the obligation of contracts; and by the use of the term 'retrospective,' cases were, doubtless, intended to be included, not within the purview of the two former classes of laws." The opinion of the learned judge in that case is a very able one, and the section of the constitution of Texas, under consideration then, was very similar to our own, on the same subject. Bouvier says (2 vol., page 475), speaking of retrospective laws: "They are generally unjust, and are to a certain extent, forbidden by that article in the constitution of the United States, which prohibits the passage of *ex post facto* laws, or laws impairing the obligation of contracts. The right to pass retrospective laws, with the exceptions above mentioned, exists in the several States according to their own constitutions, and they become obligatory, if not prohibited by the latter."

The constitution of 1865, Sec. 28, of the bill of rights, declared that "no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operation, can be passed;" yet in all the heated discussions which grew out of the provisions of that instrument imposing test oaths, it was never urged that those provisions were in conflict with that section. It is true that the test oaths were required, not by an act of the Legislature, but by the constitution itself, yet surely the framers of that instrument did not use the phrase "law retrospective in its operation" in its literal sense, and as applicable alike to crimes and criminal procedure, and civil obligations and proceedings in civil cases, otherwise they would be chargeable with having done the very thing which they had for-

bidden in section 28. It was evidently supposed, by the authors of the provisions, which were complained of as proscriptive and unconstitutional, that, not having declared the acts crimes, which they required ministers and others to swear that they had not committed, they had evaded the *ex post facto* provision of the constitution of the United States. There was room for discussion on that question, but if the clause, "law retrospective in its operation," applied equally to crimes and contracts, it was most flagrantly in conflict with the 28th section. We conclude, therefore, that in the constitution of 1865, that phrase was used, as we have interpreted its meaning in the present constitution. It is scarcely to be presumed, that the framers of that constitution, by that clause meant that no retrospective law, in the broad and literal sense of that phrase, should be passed, and in the same instrument proceeded to impose disabilities for acts previously committed, and provided for ascertaining who of the proscribed classes had committed them, by the oath of all who desired to pursue the avocations of lawyer, minister of the gospel or teacher. While the convention was composed of patriotic citizens, who, no doubt, had the good of the country at heart, there were also among them very able and learned lawyers, who thoroughly understood the language they employed. To contend that the convention intended that the expression, "law retrospective in its operation," was used in a sense which would embrace all legislation inhibited by the constitution of the United States, under the denomination of "*ex post facto* laws and laws impairing the obligation of contracts," which are also, expressly, in the same section of our bill of rights inhibited, is to attribute to the members of the convention ignorance of the meaning of the words employed by them, which we are not inclined to credit. Taken in connection with the other clause of the same section, we think there can be no doubt that the phrase "law retrospective in its operation," as used in the bill of rights, has no application to crimes and punish-

ments, or criminal procedure, and that the act of March, 1877, is neither an *ex post facto* law nor a law retrospective in its operation. It is a less difficult task to determine whether the act of 1877 is a retrospective law, or not, than to lay down a rule aptly and exactly to govern all cases, and we shall make no such attempt. The case we are considering does not require it, even if we had the capacity for the performance. Does it attempt to confer original jurisdiction upon this court? By the constitution, the Supreme Court, except in cases otherwise directed by the constitution, has appellate jurisdiction only. But, by the third section, article 6, it is *otherwise directed* in regard to writs of *habeas corpus*, mandamus, *quo warranto, certiorari*, and other original remedial writs, which it has power, under that section, to issue, and to hear and determine. The act of 1877 is an amendment to the *habeas corpus* act. While the General Assembly cannot enlarge or diminish the jurisdiction of this court, conferred upon it by the constitution, yet by the constitution, this court is authorized to issue writs of *habeas corpus*, and to hear and determine them. The practice and proceedings on these original remedial writs, is regulated by the General Assembly, and has been since the organization of our State government, and the passage of the act in question was but the exercise of a legislative power which has never been questioned. The Supreme Court, by the constitution, has appellate jurisdiction, but the constitution did not attempt to prescribe the practice in this court in cases brought here by appeal or writs of error, but left it to be regulated by the General Assembly; and this court could as well disregard the act regulating practice in the Supreme Court, as it could the act prescribing the practice in *habeas corpus* cases. Such legislation is binding upon this court, when it is a legitimate exercise of the power to regulate that practice, and not an attempt, under that guise, to abridge or enlarge the jurisdiction of the Supreme Court, conferred by the constitution.

The petitioner's prayer, to be discharged from the custody of the warden of the penitentiary, is therefore refused; and, proceeding to pass the sentence, which the court below should have passed upon him, it is by this court ordered and adjudged that said Benjamin F. Bethurum having, on the sixth day of November, 1875, been found guilty of forgery in the third degree, in the circuit court of Buchanan county, by a jury duly empanneled to try him, on an indictment preferred against him in said court, be confined in the penitentiary of the State of Missouri, for the period of seven years, from the 16th day of November, 1875, that being the date of the erroneous sentence. passed upon him, and that the marshal of this court, without delay, remove and safely convey said Benjamin F. Bethurum to said penitentiary, there to be kept, confined and treated as directed by law, and that the warden of said penitentiary receive and safely keep said Bethurum, in the said penitentiary, until this sentence of the court herein be complied with, or until he shall be otherwise discharged by due course of law. All concur.

PRISONER REMANDED.