**Doyle Ronald LAYTON, Movant-Appellant,**

v.

**STATE of Missouri, Defendant-Respondent.**

**No. 9405.**

Missouri Court of Appeals,
Springfield District.

Sept. 26, 1973.

**268**

Terry J. Flanagan, Shaw & Howlett, Clayton, for movant-appellant.

footnote

1. In his brief, the appellant refers to this incident as a "one to one confrontation". The term "showup" is sometimes used interchange-

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for defendant-respondent.

**HOGAN, Judge.**

Appellant and his "fall partner" James W. Hendrix were jointly charged and tried for burglary in the first degree and stealing. A jury found both guilty and on direct appeal the judgments of conviction were affirmed. State v. Hendrix, 454 S.W.2d 40 (Mo.1970). Subsequently appellant sought postconviction relief in a proceeding under Rule 27.26, V.A.M.R., which was denied after an evidentiary hearing. On appeal, we will consider those points properly briefed. McQueen v. State, 475 S.W.2d 111, 115 [3] (Mo. banc 1971).

In his brief, the appellant treats his first two points as one, and we shall do likewise. Those points are: "I. The pre-trial Exhibition of Movant-Appellant to the Witness, Will Hendley, at the Stoddard County Jail was so flagrantly Prejudicial as to be a Denial of Movant's Constitutional Rights to Due Process of Law in Violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. II. The pre-trial Exhibition of Movant-Appellant to the Witness, Will Hendley, at the Stoddard County Jail was Flagrantly Suggestive and Did Thereby Taint the In Court Identification of the Movant-Appellant."

■ The factual background of the case has been twice stated, State v. Hendrix, supra, 454 S.W.2d 40, and Hendrix v. State, 495 S.W.2d 457 (Mo.App.1973), and need not be restated in detail here. Will Hendley was the victim of the burglary and larceny. The "pretrial exhibition" of which the appellant complains was a showup[1] which occurred at the Stoddard

ably with the word "lineup" to mean an array of persons, including a suspect, presented to a witness or group of witnesses, but more

County Jail after appellant was taken in custody. Without fixing the date of the confrontation, appellant testified that "[T]hey brought Mr. Hendley up there to see us and they brought me down first by myself and told me to be quiet and don't say anything and to come down and stand in front of Mr. Hendley. That's what I did and after I got through they took me back upstaires [sic]."

■ The trial court found as a fact that the appellant failed to prove any prejudicial identification procedure. In this court, the appellant argues that the showup was "flagrantly prejudicial and unnecessarily suggestive and [so] conducive to irreparable mistaken identification as to be a denial of due process of law." The appellant seems to base this contention upon his testimony that Mr. Hendley was not presented with an array of persons, including the suspect, but was shown only the appellant and his codefendant. Contrary to appellant's contention that a showup is necessarily suggestive and unreliable, it is now clear that the admission of evidence of a showup, without more, does not violate due process, Neil v. Biggers, 409 U.S. 188, 201, 93 S.Ct. 375, 382 [11], 34 L.Ed.2d 401, 411 [13] (1972), and there is nothing in the record before us to indicate that the showup complained of was impermissibly suggestive or unreliable. Appellant testified that one officer was present at the showup. The officer asked Mr. Hendley if he could identify the appellant, but no suggestion was made that the appellant was one of the guilty parties. Appellant testified, and makes some point of his testimony that Mr. Hendley "didn't say anything . . . [but] shook his head in a negative manner." None of the other factors suggested as conducive to misidentification in the *Neil* case, supra, appear in the record, and appellant's interpretation of the movements of Mr. Hendley's head is scarcely enough to establish a denial of due process. The point is without merit.

Nevertheless, as we noted in Hendrix v. State, supra, 495 S.W.2d at 459 [1], it is necessary to consider whether Hendley made an in-court identification of the appellant based wholly on his observation of the appellant and Hendrix during the commission of the crime charged, or whether the in-court identification of the appellant was testimonially linked to the showup. The trial court found that there was no denial of due process in receiving Hendley's in-court identification, but the transcript of appellant's trial containing the in-court identification was not introduced in evidence—at least our record does not reflect it—and we are obliged to consider whether or not we may resort to the record presented on direct appeal to determine whether or not the trial court's finding was clearly erroneous, or whether a remand is necessary.

■ Postconviction proceedings under Rule 27.26 are civil proceedings, collateral to but technically not part of the original criminal action. Rule 27.26, paras. (a), (b); State v. Davis, 438 S.W.2d 232, 234 [1] (Mo.1969); State v. Stidham, 403 S. W.2d 616, 618 [1] (Mo.1966). In civil cases, the general rule is that courts will not judicially notice records and facts in one action in deciding another and different one, unless the proceedings to be noticed are put in evidence. Funk v. C.I.R., 163 F.2d 796, 800–801 [1] (3rd Cir. 1947); Knorp v. Thompson, 352 Mo. 44, 51, 175 S.W.2d 889, 893 [3] (1943). Nevertheless, exceptions are admitted, and the extent to which the rule is strictly applied or relaxed depends largely upon considerations of expediency and justice in a particular case, as well as what it is the court undertakes to notice. Funk v. C.I.R., supra, 163 F.2d at 801 [1]; Knorp v. Thompson, supra, 352 Mo. at 52, 175 S.W.2d at 894 [4]. In

commonly, in identification evidence cases, the term "showup" refers to the situation where one suspect is shown by himself to a witness or group of witnesses. See United States v. Hamilton, 469 F.2d 880, 882, n. 1 (9th Cir. 1972); State v. Samora, 83 N.M. 222, 490 P.2d 480, 481 (Ct.App.1971); Annot., 39 A.L.R.3d 791, 793, n. 1 (1971).

this case, there are compelling reasons for taking notice of the transcript presented on appeal, even though that transcript is part of a record of our Supreme Court. Since the trial court's findings do not disclose with clarity what connection there was, if any, between the showup and Mr. Hendley's identification evidence at appellant's trial, we might remand the case for further consideration of this question. Such action would prolong this proceeding for some time, however, and final disposition of applications for postconviction relief should be made as soon as possible, consistent with the purpose of deciding such applications on their underlying merits. Put differently, it is in the appellant's interest to have his appeal considered and decided as soon as possible; it is in the State's interest to have appeals in postconviction proceedings considered on their merits before the lapse of time prejudices its case, should a retrial be necessary. We therefore conclude that we can and should notice the transcript on the original appeal to determine whether or not the trial court's finding that Hendley's in-court identification was not based on the showup is clearly erroneous.

 Much of Mr. Hendley's in-court identification testimony is recited in the opinion filed on direct appeal, State v. Hendrix, supra, 454 S.W.2d at 42, but we have further examined Mr. Hendley's testimony at appellant's trial, and we find no testimonial link between the showup and Mr. Hendley's in-court identification. Mr. Hendley testified that he was "sound asleep" and then "kind of heard a noise, heard them [the burglars] moving around, and kind of raised up in my bed to kind of look around a little bit, and one of them slapped me and knocked me back down in the bed." Mr. Hendley said he "probably [had] seen them both, but personally . . . acquainted with them, I wasn't." When he was asked what appellant and Hendrix did, Mr. Hendley testified unequivocally that "that little one, the small-est one there [appellant] was the one . . . that done the tinkering around with my pillow and took my money." On cross-examination, Mr. Hendley insisted it was appellant who had struck him. The record on appeal shows that Mr. Hendley was an aged man who imprudently, perhaps foolishly, kept a large sum of money—$785—"the bills wrapped up and a rubber band around them, stuck under my sheet . . . and my pillow over it." He was wakened from a sound sleep by the appellant, who was physically close enough to his victim to strike him on the head, reach under his pillow and sheet and take the money which had been carefully secreted. Mr. Hendley was not the victim of the "most personally humiliating of all crimes" as was the rape victim in the *Neil* case, supra, but we have no doubt that the incident made an indelible impression on his mind. The suggestion that Hendley's in-court identification was necessarily based on a subsequent momentary confrontation is palpably without merit. Such being the case, the trial court's finding is not clearly erroneous, and if there was any error in the pretrial identification proceeding, it was harmless beyond a reasonable doubt. Powell v. Wainwright, 460 F.2d 1056, 1057 [1, 2] (5th Cir. 1972); State v. Williams, 448 S.W.2d 865, 868 [4, 5] (Mo.1970).

The appellant further contends that he was prejudiced by lack of counsel at his preliminary hearing. This point is substantially the same point made by appellant's codefendant in Hendrix v. State, supra, 495 S.W.2d at 459–460 [3–5], and what was said there is dispositive of appellant's similar point.

For the reasons indicated, the judgment is affirmed.

TITUS, C. J., and STONE, J., concur.

BILLINGS, J., took no part in the consideration or decision of this case.