STATE of Missouri, Respondent,

v.

Michael L. THOMASTON, Appellant.

No. WD 38235.

Missouri Court of Appeals, Western District.

March 10, 1987.

Paul T. Miller, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, P. Ann Dirks, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P.J., and MANFORD and BERREY, JJ.

MANFORD, Judge.

This is a civil proceeding initiated by appellant pursuant to § 552.040, RSMo Supp. 1984, seeking alternatively an unconditional or conditional release from the care, custody, and control of the Missouri Director of Mental Diseases. The circuit court entered its judgment in order form, denying both an unconditional and conditional release. The judgment is affirmed.

While appellant formally presents five points, because of their similarity and repetition, they can be reduced to three. In summary, it is charged the circuit court erred (1) in considering the transcript of a hearing in the Circuit Court of Buchanan County, Probate Division, in violation of appellant's rights under the 5th, 6th, and 14th Amendments of the United States

Constitution; (2) in taking judicial notice of the transcript of the hearing in the Probate Court of Buchanan County; and (3) in giving consideration to the transcript of the proceedings in Buchanan County, in finding that the testimony of two witnesses was not credible, and in failing to place the burden of persuasion on the party opposing appellant's application for release.

The pertinent facts are as follows:

Appellant was originally charged with three counts of murder, second degree. He was found not guilty by reason of mental disease or defect. Appellant was committed to the care, custody, and control of the Missouri Director of Mental Diseases on July 15, 1980, pursuant to § 552.040.1, RSMo Supp. 1980 by the Circuit Court, 16th Judicial Circuit. On September 4, 1985, appellant filed an application in the alternative for an unconditional or conditional release. On September 10, 1985, he filed an amended application for alternative release. An objection to his release was filed by the prosecutor of Jackson County on September 6, 1985. A hearing was held on September 26, 1986 in the Circuit Court of Jackson County. The matter was continued pending action on a motion for a mental examination filed by the prosecutor of Jackson County. The order for the mental examination was issued on October 4, 1985. At the hearing, the state was represented by an assistant prosecutor. Appellant appeared with counsel. Appellant produced two witnesses, Michael Crampton and Dr. Pu Shu. Crampton was appellant's "team psychologist". Shu was appellant's treating psychiatrist. Crampton testified he recommended a *conditional* release. He testified that he never recommended an unconditional release. When examined by the trial court, the following was disclosed:

EXAMINATION BY THE COURT:

Q. In your review of the records, are you aware that every prior hearing about release that the Department of Mental Health has stated that the defendant is a danger to himself or to the community?

A. In my reading of the records, they assess him as a characterlogical order sociopathic, and therefore potentially dangerous. In my opinion that may very well be the case; but in character disorders the learning theory can—he learned to behave that way, he can unlearn it; in my opinion, he's in that process now.

Q. My second question is: In your experience how many people, who have been found not guilty of murder by reason of insanity have you recommended be released?

A. In the court situation, or is it—well, in the two and a half years that I have been involved at St. Joseph's State Hospital, we have had approximately five people go to court that have that similar background. Of those five I believe I recommended two people.

Crampton also testified to appellant's "low frustration tolerance." Crampton stated that such a condition is a learned condition which can be unlearned and that appellant was in the process of "unlearning" this condition. Crampton acknowledged appellant's recent confrontation with other patients and stated that appellant had reported the matter to hospital personnel rather than taking action on his own.

The Crampton testimony was followed by that of Dr. Shu. At the time of the hearing, Shu stated that he had been appellant's treating psychiatrist for some three months. Shu also supported a conditional release. Shu stated that he had observed no aggressive behavior by appellant. Shu admitted that appellant's diagnosis disclosed an anti-social characterlogical disorder. Shu was then asked to relate his opinion about appellant's future behavior, and the following is what the record discloses:

A. Yes. We have difficulty like a question for the future; and we always think so far for the—my experience with him, he was able to contain in peaceful way, you know, to deal with the problems.

My predicition [sic], if he's not drinking too much, or drinking or us[ing] drugs and if very good supervision by the staff of the boarding home, he might be all right.

Q. You say he might be all right?

A. Yeah.

Q. There are no guarantees in this; is that correct?

A. Yeah; this is a part of everybody. I cannot guarantee everybody.

Then Shu was asked about the problem of drugs and/or alcohol in the placement program, and he admitted that he did not know if drugs and alcohol were a problem in the program. The trial court then asked Shu some questions, and the record reveals the following:

Q. Is it your recommendation—

A. Uh-huh.

Q. —that Michael Thomaston be given a conditional release?

A. No; we're not giving, we only suggest. We thinking he does not need to be in-patient treatment, his condition should be trial less restrictive environment, such as boarding home like by the team. We have doctors, psychologists, social worker, nurse and activity therapist, together, discuss that to see which way to go would be the best. Maybe, yeah.

Do you have other kind of question to this area?

Q. I'm not sure about two things.

A. Okay.

Q. First of all, I'm not sure if you have an opinion that this man is not likely to commit a crime against others, or that he's not a danger to himself or others.

A. No. At this present time I don't see any sign of dangerousness. That's why we try to place out in less restrictive environment. We educated a guess he's going to be all right with supervision; that's the plan.

Step by step to be less restrictive and he still have people observe him and supervise him. So that's the plan.

Q. So you do not consider that as a conditional release?

A. That's a conditional release.

Q. And you are recommending that?

A. Yes. That's why we are recommending that; yes.

Now, if he's not need to be in the hospital, should be, we call the—leave the hospital and still have the—still have the hospital staff, we have a community placement program, one unit to deal with the patient, visit to different nursing home and boarding home to check them psychiatrically, medically and physically, you know.

Q. And you, yourself, are not part of that program—

A. Yeah.

Q. —whatever it is in the community, are you?

A. No, because I'm folks of the in-patient; that's all.

THE COURT: Okay. I don't have any further questions.

At this point, the evidence ceased. The prosecutor made an oral motion for an independent mental examination, which the court, over appellant's objection, granted. The court also made the following observation:

THE COURT: I think [the mental exam] it's absolutely in order.

I don't mind saying in the presence of everyone here that the Court has considerable difficulty with the testimony of these two witnesses.

I cannot find, based on this testimony, a justification for the conditional release. And—and I'm going to sustain the prosecutor's motion for the additional examination.

And I'm going to take this matter under advisement pending further information; and the defendant is remanded to custody pending further ruling by the Court.

The record reflects that the independent mental examination was conducted, there is nothing to reveal whether the trial court ever viewed this report prior to its order judgment of March 7, 1986.[1] The trial court entered the following order denying appellant's request:

---

1. The record reveals that the trial court received a copy of the mental examination almost 30 days *after* its order judgment was entered. It must be presumed that the trial court did not review this mental examination report.

## ORDER

This Court having reviewed the testimony heard on September 25th in this Court and the transcript of the hearing in the Circuit Court of Buchanan County, Missouri, Probate Division on the 19th of December, 1985, this Court finds that there has not been any change in defendant's mental condition that would justify his being released. The Court further finds that the testimony of witnesses, Dr. Shu and Michael Cramton [sic], is not credible and non-persuasive.

WHEREFORE, defendant's motion for conditional or unconditional release is overruled.

Dated this 7th day of March, 1986.

This appeal followed.

On this appeal, appellant's position can be summed up as follows: Appellant contends that the trial court erred in finding the testimony of Crampton and Shu as not credible and nonpersuasive. Appellant further charges that the trial court erred in reviewing the transcript of a separate proceeding conducted in the Probate Court of Buchanan County (hearing held December 19, 1985). Appellant then asserts that the trial court failed to apply § 552.040 properly regarding the burden of proof required of the prosecutor who opposed appellant's release.

In his first argument, appellant simply asserts that the testimony of Crampton and Shu was sufficient to support a grant of his release. In his second argument, appellant asserts an impropriety by the trial court in reviewing the proceedings of another circuit court (probate division). In his third argument, appellant asserts that the trial court failed to apply the applicable statutory law.

Each of these arguments are taken up and addressed separately. It is noted that appellant has clothed his arguments upon alleged violations of the 5th, 6th, and 14th Amendments of the United States Constitution. It can be said at the outset that there is no validity to the generalization of constitutional violations asserted by appellant, and a sharper prospective would have been afforded this court if appellant had presented arguments directed to the details of these proceedings as opposed to making broad and sweeping generalized complaints of constitutional violations.

■ As regards the trial court's finding that neither the testimony of Crampton nor Shu was credible or persuasive, this court has reviewed that testimony and concludes that the trial court's finding was correct. While Crampton stated that he recommended a *conditional* release, he never supported an *unconditional* release, so appellant's plea for any unconditional release was never supported by witness Crampton. Crampton testified that appellant's anti-social behavior was a "learned condition" and in his opinion, appellant was involved in "unlearning" this behavior. Crampton never testified that appellant had, in fact, "unlearned" this behavior. Crampton acknowledged appellant was diagnosed as having a characterlogical order sociopathic and, therefore, a potentially dangerous condition. He also stated, "In my opinion that may very well be the case; but in character disorders the learning theory can—be learned to behave that way, he can unlearn it; in my opinion, he's in that process now."

Shu's testimony, in summary, revealed the following: Shu never supported an unconditional release. It was obvious from his testimony that appellant's behavior was, in part, contingent upon appellant's not having access to alcohol and/or drugs. Shu admitted to not knowing whether alcohol would be available to appellant upon a conditional release. Shu had contact with appellant for only two to three months prior to the hearing. Shu acknowledged that appellant possesses an anti-social nature or personality, and when asked if he (Shu) recommended a conditional release for appellant, this is how he responded:

No; we're not giving, we only suggest. We thinking he does not need to be in-patient treatment, his condition should be trial less restrictive environment, such as boarding home like by the team. We have doctors, psychologists, social worker, nurse and activity therapist, together,

discuss that to see which way to go would be the best. Maybe, yeah.

Shu did continue to state that appellant would be supervised, and based on the presumption that he would (be supervised), he could recommend a conditional release.

Based upon the unique position of the trial court in having observed and heard the above two witnesses, plus the testimony of those witnesses, it cannot be said that the trial court erred in its finding that the testimony of these witnesses was not credible or persuasive. The credibility of both witnesses was within the discretion of the trial court and absent any showing of an abuse of that discretion, this court will not act. There is absolutely no merit to appellant's challenge to the trial court's finding regarding the testimony of witness Crampton and witness Shu.

█ Appellant asserts that the trial court acted improperly when it reviewed the transcript of the December 19, 1985, proceedings in the Probate Court of Buchanan County. It must be remembered that the court from which this appeal was taken was the court which committed appellant, and that this court is located in the 16th Judicial Circuit, Jackson County, Missouri. Appellant seems to contend that there was an impropriety in the court's action and that such action is strictly prohibited. He clouds his assertions with claims of violations of his rights under the 5th, 6th, and 14th Amendments of the United States Constitution.

In the first instance, appellant is simply incorrect when he contends that there is a strict prohibition against one court reviewing the proceedings of another court regarding a completely separate action. The rule is that such review is not recommended and is not usually followed. *See Layton v. State*, 500 S.W.2d 267, 269 (Mo. App.1973), and *Haynes v. State*, 534 S.W.2d 552, 555 (Mo.App.1976). Stated another way, "In civil cases, the general rule is that courts will not judicially notice records and facts in one action in deciding another and different one, unless the proceedings to be noticed are put in evidence." *Layton*, 500 S.W.2d at 269. "The general

rule is that courts will not judicially notice records and facts in one action in deciding another and different one unless the proceeding to be noticed was put in evidence ... The rule, however, may be relaxed, in consideration of expediency and justice, even if the other record was of the Supreme Court." *Haynes*, 534 S.W.2d at 555.

There is no dispute herein that the transcript of the Buchanan County Circuit Court, Probate Division, was not put into evidence in the present proceedings. However, there is no showing by appellant that the proceedings in the Buchanan County Court were really of a different nature. To be sure, there was a formal proceeding filed in Buchanan County, but there is nothing before this court to reveal that the Buchanan County proceedings dealt with something other than appellant's request for release. In addition, appellant has failed to show that the Jackson County Court's action was not warranted by expediency and justice. Upon the failure of appellant to prove such essential or critical issues, his entire contention of impropriety by the trial court and his asserted violation of his constitutional rights are simply meritless.

The final argument presented by appellant charges that the trial court failed to place the burden of proof as regards persuasion upon the prosecutor. This entire argument presupposes the application of the amended revision of § 552.040 to the present proceedings. Appellant's assertion of the applicability of the amended statutory provision requires a full discussion of legislative changes in the statute and how those changes relate to the present proceedings.

It is noted from the outset that neither party presents to this court any authoritative or even well-reasoned argument regarding which statute was applicable to these proceedings. The parties have done little more than make broad assertions as to the applicability of § 552.040 after its amendment and the nonapplicability of § 552.040, as amended. Stated another way, appellant asserts that the amended version of § 552.040 applied, while the

prosecution asserts that § 552.040 prior to amendment applied.

This court has taken the initiative to not only resolve this issue herein but to set forth the rule applicable to proceedings in progress when and if a statutory change becomes effective.

Prior to September 28, 1985, § 552.040 read as follows:

**552.040. Acquittal based on mental disease or defect, commitment to state mental hospital required—application for release, denial, reapplication, when.**—1. When a defendant is acquitted on the ground of mental disease or defect excluding responsibility, the court shall order such person to be committed to the director of the department of mental health for custody, care and treatment in a state mental hospital. No person shall be release from such commitment until it is determined through the procedures provided in this section that he does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law.

2. No person committed under subsection 1 of this section shall be released from the commitment except under the provisions of subsection 4 of this section.

3. The provisions of sections 630.110, 630.115, 630.130, 630.135, 630.140, 630.-180, 630.183,. 630.192, 630.194, 630.196, 630.198, 630.805, 632.370, 632.385 and 632.395 and 632.435, RSMo, apply to persons committed under subsection 1, but no such person shall be released unconditionally without an order of court as hereinafter provided.

4. The committed person or the superintendent of a hospital where the person is committed may file an application in the court where the person was tried, seeking an order releasing him conditionally or unconditionally. Copies of the application shall be served personally or by certified mail upon the superintendent of the hospital unless he files the application, the committed person unless he files the application, the director of the department of mental health, and the prosecuting or circuit attorney of the county where the committed person was tried and acquitted. The committed person shall be released by order of the court unless either the superintendent of the hospital or the prosecuting or circuit attorney shall, within ten days after the service upon the last one of the two persons, file a written objection thereto. Within a reasonable period of time after such written objection is filed, which period shall not exceed sixty days unless otherwise agreed upon by the parties, the court shall hold a hearing upon notice to the confined person, the superintendent of the hospital, the director of the department of mental health, and the prosecuting or circuit attorney of the county where the person was tried. Prior to the hearing any of the parties shall be entitled to an examination of the committed person, upon written application, by a physician of his or its own choosing and at his, or its expense. By agreement of all parties to the proceeding any report of the mental condition of the committed person which may accompany the application for release or which is filed in objection thereto may be received in evidence without testimony in person of the examining physician. Upon the hearing the court shall either deny the application or order an unconditional release or a conditional release under sections 630.-610 and 632.385, RSMo, where applicable. Any order denying the application shall be without prejudice to the filing of another application after one hundred eighty days from the denial of the prior application.

The Missouri General Assembly enacted certain changes in § 552.040 (which became effective on September 20, 1985), and § 552.040 reads as follows: [2]

2. Section 552.040 was again amended in 1986. The subsequent 1986 amendment does not pertain to these proceedings so the present section is not set forth verbatim. The reader is cautioned to read and to be advised according to the present wording of § 552.040, as that statute

**552.040. Acquittal based on mental disease or defect, commitment to state mental hospital required—applications for release, types of releases, notice to prosecutor of release—hearings required, when—denial, reapplication, when.—1.** For the purpose of this section, the **"prosecutor of the jurisdiction"** means the prosecuting attorney in a county or the circuit attorney of a city not within a county.

2. When an accused is acquitted on the ground of mental disease or defect excluding responsibility, the court shall order such person committed to the director of the department of mental health for custody and care in a state mental health or retardation facility. The director of the department of mental health, or his designee, shall determine the time, place and conditions of confinement.

3. The provisions of sections 630.110, 630.115, 630.130, 630.133, 630.135, 630.-140, 630.145, 630.150, 630.180, 630.183, 630.192, 630.194, 630.196, 630.198, 630.-805, 632.370, 632.395, and 632.435, RSMo, shall apply to persons committed under subsection 1 of this section. If the department does not have a treatment or rehabilitation program for a mental disease or defect of an individual, that fact may not be the basis for a release from commitment. Notwithstanding any other provision of law to the contrary, no person committed to the department of mental health who has been acquitted by reason of mental disease or defect as provided in section 552.030 shall be conditionally or unconditionally released unless the procedures set out in this section are followed.

4. The committed person or the head of the facility where the person is committed may file an application in the court that committed the person seeking an order releasing him unconditionally. Copies of the application shall be served personally or by certified mail upon the head of the facility unless he files the application, the committed person unless he files the application, the director of the department of mental health, and the prosecutor of the jurisdiction where the committed person was tried and acquitted. Any party objecting to the proposed release must do so in writing within fifteen days after service. Within a reasonable period of time after any written objection is filed, which period shall not exceed sixty days unless otherwise agreed upon by the parties, the court shall hold a hearing upon notice to the confined person, the head of the facility, the director of the department of mental health, and the prosecutor of the jurisdiction were the person was tried. Prior to the hearing any of the parties, upon written application, shall be entitled to an examination of the committed person, by a psychiatrist or psychologist, as defined in section 632.005, RSMo, or a physician with a minimum of one year training or experience in providing treatment or services to mentally retarded or mentally ill individuals of its own choosing and at its expense. The report of the mental condition of the committed person shall accompany the application. By agreement of all parties to the proceeding any report of the mental condition of the committed person which may accompany the application for release or which is filed in objection thereto may be received by evidence, but the party contesting any opinion herein shall have the right to summon and to cross-examine the examiner who rendered such opinion and to offer evidence upon the issue.

5. By agreement of all the parties and leave of court, the hearing may be waived, in which case an order granting an unconditional release shall be entered in accordance with subsection 7 of this section.

6. At a hearing to determine if the committed person should be unconditionally released, the court shall consider the following factors in addition to any other relevant evidence:

might apply to any pending or future proceedings.

(1) Whether or not the committed person presently has a mental disease or defect;

(2) The nature of the offense for which the committed person was committed;

(3) The committed persons's behavior while confined in a mental health facility;

(4) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(5) Whether the person has had conditional releases without incident; and

(6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person taking drugs, medicine or narcotics.

The burden of persuasion shall be on the party seeking unconditional release to prove by a preponderance of the evidence that the person for whom unconditional release is sought does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others.

7. The court shall enter an order either denying the application for unconditional release or granting an unconditional release. An order denying the application shall be without prejudice to the filing of another application after the expiration of one hundred eighty days from the denial of the last application.

8. No committed person shall be unconditionally released unless it is determined through the procedures in this section that the person does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others.

9. The committed person or the head of the facility where the person is committed may file an application in the court having probate jurisdiction over the facility where the person is detained for a hearing to determine whether the committed person shall be released conditionally. The procedures for application for unconditional releases set out in subsection 4 of this section shall apply, with the following additional requirements:

(1) A copy of the application shall also be served upon the prosecutor of the jurisdiction where the person is being detained;

(2) The application shall specify the conditions and duration of the proposed release; and

(3) The prosecutor of the jurisdiction where the person is being detained shall represent the public safety interest at the hearing unless the prosecutor of the jurisdiction where the person was tried and acquitted decides to appear to represent the public safety interest.

10. By agreement of all the parties, the hearing may be waived, in which case an order granting a conditional release, stating the conditions and duration agreed upon by all the parties and the court, shall be entered in accordance with subsection 12 of this section.

11. At a hearing to determine if the committed person should be conditionally released, the court shall consider the following factors in addition to any other relevant evidence:

(1) The nature of the offense for which the committed person was committed;

(2) The person's behavior while confined in a mental health facility;

(3) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(4) The nature of the person's proposed release plan;

(5) The presence or absence in the community of family or others willing to take responsibility to help the defendant adhere to the conditions of the release; and

(6) Whether the person has had previous conditional releases without incident. The burden of persuasion shall be on the party opposing release to prove by clear and convincing evidence that the person for whom release is sought is likely to be dangerous to others while on conditional release.

12. The court shall enter an order either denying the application for a conditional

release or granting conditional release. An order denying the application shall be without prejudice to the filing of another application after the expiration of one hundred eighty days from the denial of the last application.

13. No committed person shall be conditionally released until it is determined that the committed person is not likely to be dangerous to others while on conditional release.

14. If, in the opinion of the head of a facility where a committed person is being detained, that person can be released without danger to others, he may be released from the facility for a trial release of up to ninety-six hours under the following procedure:

(1) The head of the facility where the person is committed shall notify the prosecutor of the jurisdiction where the committed person was tried and acquitted at least fourteen days before the date of the proposed trial release;

(2) The notice shall specify the conditions and duration of the release;

(3) If no prosecutor to whom notice is required objects to the trial release, the committed person shall be released according to conditions and duration specified in the notice;

(4) If any prosecutor objects to the trial release, the head of the facility may file an application with the court having probate jurisdiction over the facility where the person is detained for a hearing under the procedures set out in subsections 4 and 9 of this section with the following additional requirements:

(a) A copy of the application shall also be served upon the prosecutor of the jurisdiction into which the committed person is to be released; and

(b) The prosecutor or prosecutors who objected to the trial release shall represent the public safety interest at the hearing; and

(5) The release criteria of subsections 11 through 13 of this section shall apply at such a hearing.

15. The department shall provide or shall arrange for follow-up care and monitoring for all persons conditionally released under this section and shall make or arrange for reviews and visits with the client at least monthly, or more frequently as set out in the release plan, and whether the client is receiving care, treatment, habilitation or rehabilitation consistent with his needs, condition and public safety. The department shall identify the facilities, programs or specialized services operated or funded by the department which shall provide necessary levels of follow-up care, aftercare, rehabilitation or treatment to the persons in geographical areas where they are released.

16. The head of a mental health or retardation facility may revoke the conditional release or the trial release and request the return of the committed person if the head of the facility has reasonable cause to believe that the person has violated the conditions of his release. If requested to do so by the head of the facility, a peace officer of a jurisdiction in which a patient on conditional release is found shall apprehend and return him to the facility. If a person on conditional release is returned to a facility under the provisions of this subsection, a hearing shall be held within ninety-six hours, excluding Saturdays, Sundays and state holidays, to determine whether the person violated the conditions of the release and whether resumption of full-time hospitalization is the least restrictive alternative consistent with the person's needs and public safety. The director of the department of mental health or his designee shall conduct the hearing. The person shall be given notice at least twenty-four hours in advance of the hearing and shall have the right to have an advocate present.

As noted from the above factual account, the present proceedings were commenced on September 4, 1985, by appellant's application. That application was amended on September 10, 1985, subsequent to a formal objection filed on September 6, 1985, by the prosecutor of Jackson County. The hearing on this matter commenced on September 26, 1985. The matter was contin-

ued (after appellant's testimony was received) pending the completion of an independent mental examination of appellant and the submission of the report of said examination. The trial court then issued its order judgment on March 7, 1986.

It can be readily observed that two days after the commencement of the hearing and the submission of appellant's evidence on September 26, 1985, § 552.040 was amended and the effective date of that change was September 28, 1985. The legislative change, having occurred during these proceedings, provokes certain questions regarding the applicability of the former § 552.040 or the revised version of § 552.040. These questions are: (a) Were the changes in § 552.040 substantive or procedural? and (b) Was the revised version of § 552.040 applicable in toto or only partially to the present proceeding since it had commenced prior to the effective date of the statutory amendment?

In answering the above questions, this court first must ascertain the nature of the revised version of § 552.040. In other words, was this revised version substantive or procedural? If the revised version was found to be substantive, then it could not be applied retroactively to the present proceedings. There is a constitutional prohibition against the passage and application of retrospective laws. Mo. Const. Art. I, § 13. Our state constitution reads as follows:

**13. Ex post facto laws—impairment of contracts—irrevocable privileges**

Section 13. That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted.

■ This area of the law makes use of the terms ex post facto, retrospective and retroactive. While it may seem elementary in the annals of legal education and legal usage to point out that there is a distinct difference in these terms, often it is neces-

sary simply because of the misuse of these terms by both bench and bar. The term *ex post facto* is a term applicable to *criminal* legislation only and has no application to civil proceedings, while the term *retrospective* refers exclusively to laws related to civil rights and remedies. *See State ex rel. Jones v. Mallinckrodt Chemical Works,* 249 Mo. 702, 156 S.W. 967, 975 (1913); *aff'd.* 238 U.S. 41, 3 S.Ct. 671, 59 L.Ed. 1192 (1915); *Westerman v. Supreme Lodge K.P.,* 196 Mo. 670, 94 S.W. 470, 489–90 (1906); *Gladney v. Sydnor,* 172 Mo. 318, 72 S.W. 554, 556 (1903)[3]; *State v. Kyle,* 166 Mo. 287, 65 S.W. 763, 768 (1901); *Leete v. State Bank of St. Louis,* 115 Mo. 184, 21 S.W. 788, 791 (1893); and *Ex parte Bethurum,* 66 Mo. 545, 548 (1877). *See also Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 35 (Mo. banc 1982), *appeal dismissed* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983); *State ex rel. Sweezer v. Green,* 360 Mo. 1249, 232 S.W.2d 897, 900 (banc 1950)[4]; *State ex rel. Jones v. Nolte,* 350 Mo. 271, 165 S.W.2d 632, 638 (banc 1942); *In re Marriage of Simpelo,* 542 S.W.2d 558, 560–61 (Mo.App.1976); and *State v. Adams,* 532 S.W.2d 524, 530 (Mo. App.1976). It is amazing how often these two terms are incorrectly applied in discussion, argument, and case decisions by both bench and bar. Further, the term *retroactive* has been defined as synonymous with the term *retrospective.* Thus, a retrospective law or statute is a law applicable to civil proceedings "which looks backward or contemplates the past; one which is made to effect acts or facts occurring, or rights accruing, before it came into force. Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." Blacks Law Dictionary 1184 (5th ed. 1979).

■ A law is "retroactive" in its operation when it looks or acts backward from

---

**3.** Overruled on other grounds. *See Bushnell v. Loomis,* 234 Mo. 371, 137 S.W. 257, 260 (1911).

**4.** Overruled on other grounds. *See State ex rel. North v. Kirtley,* 327 S.W.2d 166, 168 (Mo. banc 1959).

its effective date and is retrospective "if it has the same effect as to past transactions or considerations as to future ones, ..." *State ex rel. Meyer v. Cobb,* 467 S.W.2d 854, 856 (Mo.1971). *See also State ex rel. Clay Equipment Corp. v. Jensen,* 363 S.W.2d 666, 670 (Mo. banc 1963); *State ex rel. Breshears v. Missouri State Employees' Retirement System,* 362 S.W.2d 571, 576–77 (Mo. banc 1962); *First National Bank of St. Joseph v. Buchanan County,* 356 Mo. 1204, 205 S.W.2d 726, 731 (1947); *State ex rel. Crutcher v. Koeln,* 332 Mo. 1229, 61 S.W.2d 750, 754 (banc 1933); and *Graham Paper Co. v. Gehner,* 332 Mo. 155, 59 S.W.2d 49, 51–52 (banc 1933).

■ Our state constitution prohibits the enactment of ex post facto laws applicable to criminal proceedings and to retrospective laws applicable to civil proceedings. On the civil side of legal proceedings, there is no prohibition against the passage of laws which might be *retroactive* but not *retrospective.* The distinguishing feature, of course, which has been developed in our law is that when a law makes only a procedural change, it is not *retrospective* and hence can be applied *retroactively.* This distinction has been made clear in the declaration which states, "The constitutional inhibition against laws retrospective in operation ... does not mean that no statute relating to past transactions can be constitutionally passed, but rather, that none can be allowed to operate retrospectively so as to affect such past transactions to the substantial prejudice of parties interested." *Fisher v. Reorganized School District No. R–V of Grundy County,* 567 S.W.2d 647, 649 (Mo. banc 1978), citing *Willhite v. Rathburn,* 332 Mo. 1208, 61 S.W.2d 708, 711 (1933).

■ To state the principle in the present vernacular, a law is retrospective and thus not retroactive if it affects the substantive or vested rights of a party and by contrast if a law is procedural only and does not affect the substantive rights of a party it is *retroactive* but not *retrospective. State ex rel. Lawyers Title Insurance Corp. v. Elrod,* 636 S.W.2d 396, 397–98 (Mo.App. 1982).

■ There are some other general principles also applicable. First, the terms *ex post facto* and *retrospective* apply to legislative enactments, not judicial decisions. *In re Marriage of Simpelo, supra.* Secondly, neither persons nor corporations have any "vested rights" in a general rule of law or legislative policy which would entitle anyone to insist that a law remain unchanged. *Curators of Central College v. Rose,* 182 S.W.2d 145 (Mo.1944), appeal dismissed, 323 U.S. 678, 65 S.Ct. 269, 89 L.Ed. 550 (1944), rehearing denied 323 U.S. 818, 65 S.Ct. 429, 89 L.Ed. 650 (1945). Further, statutes are to be considered to have a prospective application or operation unless an intent to the contrary is expressed or implied from the language used, especially where to construe legislation would render it unconstitutional. *Supreme Council of the Royal Arcanum v. Heitzman,* 140 Mo.App. 105, 120 S.W. 628, 630 (1909). Also, however, a procedural statute will operate or will be applied retrospectively (i.e., retroactively) unless a contrary intent appears from the very terms of the legislation. *St. Louis Police Officers' Association v. Sayad,* 685 S.W.2d 913, 917 (Mo.App.1984). One additional and noted exception is that a law will be applied retrospectively if such intent is clearly manifested by the Missouri General Assembly. *Lawyers Title, supra.*

So with the foregoing in mind, the question which must be answered first herein is whether the amendment or revision of § 552.040, effective September 28, 1985, affected a vested or substantive right of either appellant or the state, and was thus retrospective, or was such amendment or revision merely procedural in nature and thus not retrospective and hence retroactive? A comparison of the statute existing prior to September 28, 1985, and the amended version effective September 28, 1985, reveals that the amended or revised statute creates a right not contained in the previous statute. The amended statute contains the following language:

If, in the opinion of the head of a facility where a committed person is being detained, that person can be released with-

out danger to others, he may be released from the facility for a trial release of up to ninety-six hours under the following procedure ...

▮ While the foregoing creates a new vested or substantive right unto the "head of a facility", that language and the right created does not impair any pre-existing vested or substantive right of the parties herein. That newly created right is prospective only. The result is that the amended or revised statute is procedural and is thus retroactive.

The amended or revised statute prescribes the court having jurisdiction in matters of unconditional releases, the court having jurisdiction in matters of conditional releases, the burden of proof as regards unconditional releases versus conditional releases, the nature and quantum of proof required, and the procedure by which applications for release shall be entertained.

Thus, the amended or revised § 552.040 is held to be procedural and thus retroactive. Thus, question (a) above is answered in the affirmative. The issue between the parties focuses upon § 552.040.11. That portion of the amended statute reads:

The burden of persuasion shall be on the party opposing release to prove by clear and convincing evidence that the person for whom release is sought is likely to be dangerous to others while on conditional release.

This court has found no Missouri case which has declared that the burden of proof is a procedural law. This court has reviewed and herein adopts the rule announced in *United Securities Corporation v. Bruton*, 213 A.2d 892 (D.C.1965), which states:

There is no vested right in a rule of evidence, and a statute relating solely to procedural law, such as burden of proof and rules of evidence applies to all proceedings after its effective date even though the transaction occurred prior to its enactment.

Appellant makes the claim herein that the burden of proof or persuasion as regards conditional release lies with the prosecutor and that the trial court erred in reviewing the transcript from the Buchanan County Circuit Court because § 552.-040.11 does not "contemplate the acceptance of transcript evidence of a hearing from a foreign county." The state merely argues that § 552.040, as amended, simply does not apply to the present proceedings.

The thrust of the matter is neither party is absolutely correct.

▮ In the first instance, if appellant's contention was correct as applies to this proceeding, appellant is not in the court having jurisdiction. Stated another way, if appellant is to prevail on the issue of the burden of persuasion as prescribed by § 552.040.11 then that provision is applicable only to appellant's request for conditional release. Section 552.040 as amended vests jurisdiction of conditional release applications in the probate division of the circuit court having jurisdiction over the facility where the person (appellant herein) is detained. Thus, if § 552.040 as amended is to be applied, and more specifically, subsection 9 thereof, then the Probate Division of the Buchanan County Circuit Court would have jurisdiction and not the Circuit Court of the 16th Judicial Court, Jackson County, Missouri.

▮ Appellant cannot have it both ways. He filed his application for release in the alternative. He now urges the application of the amended version of § 552.040, seeking to place the burden of persuasion upon the state. However, before appellant can seek the enforcement of § 552.040.11, he must have filed his application in the court having jurisdiction of his application for conditional release. Appellant has not done so in this proceeding and hence § 552.040.11 does not apply to this proceeding.

Attention can now be given to question (b) above. Was the revised or amended version of § 552.040 applicable to the present proceeding in toto or only partially? As noted, it has already been ruled that the amended statute is procedural and hence retroactive in its application. It has been further ruled that appellant cannot secure the application of § 552.040.11 be-

cause the Circuit Court of the 16th Judicial Circuit is without jurisdiction to hear appellant's application for conditional release.

In response to question (b) above, the particular provision of amended § 552.040 (i.e., § 552.040.11) is not applicable nor is § 552 040.6.

■ Section 552.040.6 addresses applications for unconditional release. The jurisdiction over applications for unconditional release is vested in the court which committed the applicant. In the present case, that court is the Circuit Court of the 16th Judicial Circuit, Jackson County, Missouri. This discussion is included to illustrate the confusion which was occasioned by the amendment of § 552.040 during the process of appellant's alternative application for relief. That neither § 552.040.11 nor § 552.040.6 apply to the present proceedings will be observed *infra.*

One might presuppose that since appellant had initiated these proceedings prior to the effective date of the amended § 552.-040, that concluded the matter. That is not the rule. The rule applicable is set forth by our Missouri Supreme Court in the case of *Clark v. Kansas City, St. L. & C.R. Co.,* 219 Mo. 524, 118 S.W. 40, 43 (1909), which holds:

> Where a new statute deals with procedure only, prima facie it applies to all actions—those which have accrued or are pending and future actions. What was before a subject of equitable relief may be made triable by jury without affecting vested rights. If, before final decision, a new law as to procedure is enacted and goes into effect, it must from that time govern and regulate the proceedings. But the steps already taken, the status of the case as to the court in which it was commenced, the pleadings put in and all things done under the late law will stand unless an intention to the contrary is plainly manifested; and pending cases are only affected by general words as to future proceedings from the point reached when the new law intervened. If what has been done under the old law is bad or insufficient under that law, it remains so, though it would have been

good if done in the same way under the new law.

■ There is no dispute between the parties herein that the amended statute does not contain any *manifest intention to the contrary.* Stated another way, the parties do not disagree and indeed this court fails to find any intent by the Missouri General Assembly that the amended statute should apply to any proceeding already completed or to any portion of any proceeding completed prior to the effective date of the amended statute. *See State ex rel. Simmerock v. Brackmann,* 714 S.W.2d 938, 942 (Mo.App.1986); *State ex rel. Research Medical Center v. Peters,* 631 S.W.2d 938, 946 (Mo.App.1982); *Lincoln Credit Co. v. Peach, supra; Department of Social Services v. Villa Capri Homes, Inc.,* 684 S.W.2d 327, 332 (Mo. banc 1985); and *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder,* 515 S.W.2d 409, 410 (Mo. banc 1974). As to the same question on matters pending on appeal, see *Gross v. Harris,* 664 F.2d 667, 669 (8th Cir.1981).

■ So, the conclusion that must be reached is that neither § 552.040.11 nor § 552.040.6 is applicable to the present proceedings because both sections address the burden of proof or burden of persuasion. Under § 552.040.11, the burden rests with the party opposing release. Under § 552.-040.6, that burden rests with the applicant or one who has filed an application on behalf of the person under commitment. When the rule in *Clark* is applied to the present proceedings, it becomes obvious that the pleading and evidentiary stages of this proceeding had "been done under the old law" and hence, under *Clark,* that part of the proceeding "remains so."

The prior statute § 552.040 contained no express provision regarding the burden of proof or burden of persuasion regarding an application for unconditional or conditional release. However, it has been ruled that the burden under the prior § 552.040 was upon the applicant. *State v. Pedersen,* 651 S.W.2d 639, 641 (Mo.App.1983).

■ Appellant herein bore the burden of proof and the burden of persuasion,

*Pedersen, supra,* under the prior § 552.-040, and the pleading and evidentiary stages of this proceeding had passed prior to the effective date of amended § 552.040. Thus, under the rule announced in *Clark,* and because of the facts and circumstances of this proceeding relative to the effective date of the amended § 552.040, appellant, and not the state, bore the burden of proof or burden of persuasion. As noted above, appellant failed to carry that burden.

In contrast, had the evidentiary stage of this proceeding not been passed at or upon the effective date of the amended § 552.-040, an entirely different matter would be presented in that the amended § 552.040, being procedural and thus retroactive, would have been applicable and thus would have defined the burden of proof or persuasion for the state and/or the applicant relative to the application for both unconditional and conditional release. The only remaining problem would be that of jurisdiction discussed above.

It, therefore, must be concluded that appellant's assertion that the trial court erred in failing to place the burden of persuasion upon the opposing party (state herein) is without merit.

As noted previously, § 552.040 was again amended in 1986, and the only change or revision was the addition of subsection 17, which reads as follows:

> 17. The head of a mental health facility, upon any notice that a committed person has escaped confinement, or left the facility or its grounds without authorization, shall immediately notify the prosecutor and sheriff of the county wherein the committed person is detained of the escape or unauthorized leaving of grounds.

The foregoing subsection 17 has nothing to do with the issues presented by this proceeding or anything to do with the procedure, quantum of proof, burden of proof, or the hearing procedure applicable to the disposition of applications for unconditional and conditional release. It is noted that with the September 28, 1985, amendment, applications for release can no longer be filed in the alternative as was done in the present proceedings. This is so because jurisdiction for the disposition of an application for an *unconditional release* is vested in the court which originally committed the applicant. In addition, the statute in its present format places the burden of proof or persuasion upon the applicant or any person having filed on behalf of applicant. § 552.040.6. In contrast, the statute, in its present format, vests jurisdiction over an application for *conditional* release in the probate division of the circuit court having jurisdiction over the facility wherein the applicant is detained. The burden of proof or persuasion as regards a conditional release is placed upon a party opposing the conditional release. § 552.-040.11.

In conclusion, it is found that there is no merit to any of the points raised by appellant. Appellant has failed to establish that the trial court erred in considering the transcript of the Buchanan County Circuit Court. Appellant has failed to establish that the trial court erred in taking judicial notice of the transcript of the Buchanan County Circuit Court. Appellant has failed to show that the trial court erred in finding that the testimony of witnesses Crampton and Shu was not credible and of nonpersuasion. The appellant has failed to establish that the trial court erred by not placing the burden of persuasion upon the opposing party, in this case the state.

For and upon the foregoing reasons, the judgment of the trial court is in all respects affirmed.

All concur.